[Crim. No. 14317. Second Dist., Div. Five. Jan. 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES HOWARD BELCHER, Defendant and Appellant.

Richard A. Caillouette for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce M. Perlman, Deputy Attorney General, for Plaintiff and Respondent.

REPPY, J.—Defendant and appellant Belcher was charged in an information with one count of burglary in violation of section 459 of the Penal Code and one count of possession of narcotics in violation of section 11500 of the Health and Safety Code.

Defendant pleaded not guilty and not guilty by reason of insanity. Pursuant to section 730 of the Evidence Code, the court appointed Dr. A. R. Tweed and Dr. B. Skrdla, both psychiatrists, to examine defendant.

Defendant personally and all counsel waived trial by jury on both pleas. After trial, defendant aas found guilty as to both counts of the information and was determined to have been sane at the time of the commission of the offenses. Thereafter an order was made placing defendant on probation. It is the trial court's finding of defendant's sanity at the time of the commission of the crimes that defendant attacks on appeal.

As to the guilt phase, the record discloses the following circumstances. At approximately 6:30 a.m. on March 12, 1967, Officers Hoover and Hardy of the Whittier Police Department noted an open window in the rear of a small medical center located on South Painter Avenue in the City of Whittier. While Officer Hardy left the patrol car to investigate, Officer Hoover followed and stopped a vehicle he had observed leaving the parking lot of the medical center. Defendant was the sole occupant of the car. Officer Hoover approached defendant, indicated to him that there was a possibility that a burglary had been committed at the medical center, and inquired if he had seen anyone in the area. Defendant stated that he was out driving and had observed two juveniles around the broken window at the rear of the center; that upon his investigation the juveniles had run away.

Officer Hoover noticed that defendant's left hand was lacerated with blood flowing from the wound. The officer inquired as to the cause of the wound, and defendant replied that he had sustained the cut while picking up broken glass at the medical center, feeling someone might fall and hurt himself. Defendant denied having gone into the building. At this time, the officer advised defendant of his constitutional rights. Officer Hoover then pointed out to defendant that he had mud on his shoes and that mud of comparable type might be in the building and again asked him if he had been inside the medical center. The defendant then stated he had entered the building to ascertain whether or not there were any additional

juveniles inside. Officer Hoover then placed defendant under arrest and searched his vehicle. Under the front seat he found two small bottles. One proved to contain morphine pills and the other demerol fluid.

Officer Hoover was acquainted with defendant prior to March 12, 1967, because the officer had been a student in a first aid class taught by defendant. The officer, at the time of defendant's arrest, observed that defendant's eyes were pinpointed, his eyelids were droopy, and his speech was slower than what the officer remembered to be defendant's normal tempo of speaking. It was the officer's opinion that defendant was "under the influence of something."

Officer Bock of the Identification Bureau of the Whittier Police Department lifted various fingerprints from inside the medical center which matched defendant's fingerprint exemplar.

The sanity phase of the trial developed in the following manner. The defense called Dr. Gladstone, defendant's personal physician, who testified that tests run on defendant on April 20, 1967, indicated that he was suffering from lead poisoning.

Dr. Philip Kramer, also called by defendant, a psychiatrist who had been treating defendant for some time before the incident in question, testified that it was his opinion that defendant had suffered brain damage from an acute case of lead poisoning producing a disease called lead encephalopathy and that defendant was mentally ill at the time the act was committed.

Defendant himself testified that he was a chemist working for the Atlantic Richfield Oil Company; that in his job he was exposed to various chemical substances; that he had no recollection of any events after 9 p.m. on the evening of March 11, 1967, until he found himself in his car in the parking lot of the medical center with lacerations on his left arm.

For the prosecution, Dr. A. R. Tweed, one of the court-appointed psychiatrists, testified that in his opinion defendant was sane at the time of the commission of the offense (and, incidentally, that he had the capacity to form the specific intent for the crimes charged). Dr. Tweed stated that defendant's exculpatory statements to the arresting officer concerning juveniles he claimed to have seen running from the area negated his claim that he had had a mental lapse during the time the charged offense took place in the medical center.

The second court-appointed psychiatrist, Dr. B. Skrdla,

testified in substantial concurrence with the testimony of Dr. Tweed.

In separate statements filed with and received in evidence by the court, both Dr. Tweed and Dr. Skrdla reported that defendant had previously used demerol by doctor's prescription and on one occasion used it illegally. This was substantiated by defendant himself during cross-examination.

Defendant's contention, in essence, is that the People's evidence presented in the sanity phase was primarily circumstantial in nature and therefore, because there was some evidence presented in defense that defendant was insane, as a matter of law he should have been found insane.

Defendant cites *People* v. *Scott,* 176 Cal.App.2d 458 [1 Cal.Rptr. 600], and *People* v. *Flores,* 58 Cal.App.2d 764 [137 P.2d 767], for language which he feels states the controlling rule when circumstantial evidence is a factor. The excerpt from Scott is as follows (p. 489) : "It is not enough that the jury should have believed that the proved circumstances tended strongly to establish the guilt [sanity in our case] of appellant. The final test to be applied was whether the facts found and the reasonable inferences from them proved the nonexistence of any reasonable hypothesis of innocence [insanity in our case]."

However, it is to be noted that this rule applies after the trier of fact has resolved any conflicts in the evidence. (*People* v. *Treggs,* 171 Cal.App.2d 537, 543 [341 P.2d 342]. See also *People* v. *Huizenga,* 34 Cal.2d 669, 675 [213 P.2d 710].) It is apparent that the trial judge resolved the conflict between the opinions of the defense experts and the prosecution experts by accepting the latter and rejecting the former. This left the insanity phase of the case in a posture where there were no dual hypotheses. (*People* v. *Carter,* 56 Cal.2d 549, 560 [15 Cal.Rptr. 654, 364 P.2d 477] ; *People* v. *Rittger,* 54 Cal.2d 720, 730 [7 Cal.Rptr. 901, 355 P.2d 645].)

Moreover, the rule which defendant stresses is not the one we must apply in reviewing the lower court's findings of fact. As was noted in *People* v. *Newland,* 15 Cal.2d 678, 682 [104 P.2d 778], ". . . the rule that the circumstances relied upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review. . . . 'The rule above announced does no more than to instruct the jury that, if a reasonable doubt is created in their minds for any reason, they must acquit the

defendant. ▮ But, where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypothesis [*sic*], this Court is bound by the finding of the jury.' "

▮ It makes no difference that in the present case the judge was the trier of fact. His determination as to the ultimate facts is to be made under the same legal guidelines as those for a jury, and it is to be presumed that he knew and applied these guidelines. The rule for our review of his findings exactly parallels our rule of review for findings of a jury. (*People* v. *Daugherty,* 40 Cal.2d 876, 884 [256 P.2d 911].)

▮ To find the guiding rule for our review of the evidence, defendant needed to go no further than *People* v. *Scott, supra,* 176 Cal.App.2d 458, upon which he relies (p. 497) : " 'After conviction all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that *upon no hypothesis whatsoever* is there sufficient substantial evidence to support it.' " (Citations omitted.) (Italics added.)

▮ This announced rule of appellate review does not change if the issue is one of insanity. As was stated in *People* v. *Dean,* 158 Cal.App.2d 572, 577 [322 P.2d 929] : "The finding of the trier of fact upon the issue of insanity cannot be disturbed on appeal if there is any substantial and credible evidence in the record to support such finding." (See also *People* v. *Feldkamp,* 51 Cal.2d 237 [331 P.2d 632].)

▮ Thus, the question in the case before us is whether there is any reasonable hypothesis upon which the trial judge could have found the defendant legally sane during the commission of the crime. The facts of this case speak for themselves in this regard. There was clearly sufficient evidence in the form of the testimony of the two court-appointed psychiatrists which established that defendant was legally sane when he committed the acts for which he was found guilty.

Defendant lays much stress on the fact that defendant was, in the words of Officer Hoover, "under the influence of something" at the time of his arrest immediately following the burglary. Defendant impliedly claims that since subsequent chemical tests run on him proved negative with respect to the presence of narcotics, and since there was a good deal of evidence to support a finding that he was not, in fact, a drug addict, there could be no reasonable hypothesis for finding his actions legally culpable.

This analysis by defendant is defective, however, because it assumes that merely because defendant appeared to be "abnormal" immediately following the acts in question, he necessarily must have been insane in the eyes of the law. Such a proposition is not logical and would not constitute a workable definition of insanity. ▮ Obviously the trial judge relied on the expertise of the two court-appointed psychiatrists that defendant was not legally insane and rejected the contrary opinion put forward by Dr. Kramer. It is not our function to overturn such a judgment which has substantial support in the evidence, even if we would not have ruled in the same way at the trial level. (*People* v. *Redrick,* 55 Cal.2d 282, 290 [10 Cal.Rptr. 823, 359 P.2d 255].)

*People* v. *Flores, supra,* 58 Cal.App.2d 764, where a conviction was overturned by the reviewing court, relied on by defendant, is not controlling here. In that case the appellate court found that every fact proven at trial was consistent with the reasonable conclusion that the defendant was innocent and, therefore, the question was one of law for the court.

The judgment (order granting probation) is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.