63 Cal.App.3d 599 (1976)
133 Cal. Rptr. 815
THE PEOPLE, Plaintiff and Respondent,
v.
JOE FRANKLIN CAMPBELL, Defendant and Appellant.
Docket No. 8503.
Court of Appeals of California, Third District.
October 28, 1976.
*603 Joe Franklin Campbell, in pro. per., and Alan M. Caplan, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
REGAN, J.
After a trial by jury, defendant was found guilty of the following crimes (listed by information number):
No. 15144  second degree burglary (Pen. Code, § 459) as charged in count I.
No. 15147  petty theft (Pen. Code, § 488), a lesser included offense of grand theft (Pen. Code, § 487, subd. 1) as charged in count I; grand theft of a firearm (Pen. Code, § 487, subd. 3) as charged in count II; and receiving stolen property (Pen. Code, § 496) as charged in count III.
*604 No. 15170  attempted theft of an automobile (Veh. Code, § 10851) as charged in count I.
No. 15216  theft of an automobile (Veh. Code, § 10851) as charged in count I; and forgery of a check (Pen. Code, § 470) as charged in count II.
Defendant appeals from the judgments of conviction contending:

Trial on Mental Competence
1. Pretrial determination of competence was not supported by the evidence.
2. Trial court should have, sua sponte, ordered further psychiatric testing.
3. Trial court failed to give required admonition.
4. Prejudicial error was committed by admission into evidence of a subsequent act.
5. Failure of the court to instruct as to evidence of other offenses was prejudicial error.
6. Defendant was denied adequate counsel at this stage of the jury trial.

Trial on Criminal Charges
1. Defendant was denied effective assistance of counsel during this portion of the trial.
2. Defendant's conviction for violating Penal Code section 496 must be reversed.
3. Defendant cannot stand convicted of grand theft and petty theft.
4. Trial court erroneously ruled with respect to defendant's motion for sentencing pursuant to Penal Code section 1168.
5. The sentence in this case constitutes multiple punishment prohibited by Penal Code section 654.

*605 Trial on Mental Competence[1]
The defendant called as his expert witness Dr. Raitt, a medical doctor with a specialty in psychiatry, who works in public service with the Glenn County Mental Health Program.
Dr. Raitt had interviewed defendant for approximately 90 minutes. He had read police reports, a prior evaluation by a Dr. Maguire, and a social and vocational evaluation prepared in 1969. Based upon the foregoing, Dr. Raitt concluded that defendant suffered from "[p]robable mental retardation, mild to border line in type." He stated that defendant understood the charges against him and understood that he had an attorney and appreciated the attorney's function. Dr. Raitt was of the opinion that defendant was capable of standing trial. However, he also indicated that there was a "possibility" the defendant might not understand the nature of the proceedings against him. Further evaluation would be necessary to determine whether or not defendant was definitely mentally retarded.
The defense called one other witness, a friend of the defendant, who testified he did not think defendant was "all there." This opinion, however, was apparently based upon what he had read in the newspapers, and not upon his personal observation of the defendant.
The People called Dr. Cole, a psychiatrist with some experience in prison work. Dr. Cole had interviewed the defendant for a little over one hour. Apparently Dr. Cole reviewed the same materials that Dr. Raitt had read. Dr. Cole made the following diagnosis: "Mild mental deficiency with a passive-aggressive mode of behavior, primarily passive-dependent in type, with drug dependence on multiple types of drugs, primarily alcohol, LSD, and cocaine." Defendant's IQ range of 69-79 placed him in the category of the mentally retarded. Dr. Cole referred to his condition as "mild mental retardation," and concluded that this condition did not interfere with defendant's understanding of the proceedings and he was competent to help in the defense of his case.
*606 James Wright, a cellmate of the defendant, testified for the prosecution. He related to defendant that he had been adjudged criminally insane in Texas, had been incarcerated in a state hospital for 90 days, and then had been released from all further responsibility. Wright denied that he was instructing defendant how to act in his case. Wright stated that he had been recently charged with attempted escape and conspiracy to escape; his coconspirator was defendant.
Ted Leifried, a county jail supervisor, was called by the People. Leifried had come into contact with defendant on a number of occasions. He felt that defendant's conduct was normal. At one time he had eavesdropped on defendant and heard him tell another prisoner he (defendant) had talked to Wright and intended to change his plea to not guilty by reason of insanity. He told this other inmate he would serve less than a year in a state hospital, and then be eligible for social security or welfare.
Lew Anderson, a deputy sheriff acting as a jailer, testified that defendant had adjusted to jail "as well as anybody could be expected." At one point defendant made an unsolicited statement to Anderson to the effect that he (defendant) would go to a mental hospital for about six months and then be back out on the street.

Trial on Criminal Charges

No. 15144  Denny's Restaurant Burglary
On the evening of June 22, 1975, the defendant was observed taking a large plate or tray of beef from the Denny's Restaurant in Willows. Defendant was not employed at the restaurant at the time and had never been given permission to remove any meat from the walk-in cooler box.

No. 15147  Theft of Jacobs' Purse
On June 27, 1975, Betty Jacobs left her purse in her car while she ran an errand. Among other items in her purse was a .25 caliber semi-automatic pistol and a 1923 silver dollar with distinctive markings.
*607 The defendant was seen taking Jacobs' purse from her car.
The defendant used the silver dollar in purchasing some liquor.[2] The pistol was recovered from a dresser in a house belonging to a friend of the defendant.
Jacobs never recovered her stolen purse. To replace the missing items (excluding such items as the pistol and silver dollar) cost $186.30.

No. 15170  Attempted Theft of an Automobile
On July 29, 1975, at approximately 6:30 p.m., a person resembling defendant was seen attempting to start Jack Martin's MG convertible. The witness advised Martin who went to his car and asked defendant what he was doing. The defendant jumped out of the MG and fled. Martin was relatively sure someone had attempted to start his car.

No. 15216  Theft of Automobile
In the early morning hours of July 29, 1975, Jeffery Landon parked his Datsun pickup truck in front of his father's office. When Landon returned for it later in the day he found it was missing.
On that same day, the defendant picked up two girls in Landon's pickup and they went for a joyride. Defendant told the girls he had purchased the truck. The trio involved the truck in an accident, and it was later abandoned.

No. 15216  Passing of Forged Check
On July 26, 1975, a bartender at the Elkhorn Lodge cashed a check for the defendant. The check was made out to "Joe Campbell" in the amount of $30 and was signed "John F. Bach." The check was ultimately returned unhonored by the bank.
The check cashed by defendant contained an account number belonging to customer Kim Bass. Bass had never authorized anyone other than herself to write a check on this account. The handwriting on the check appeared to be that of the defendant.

*608 Arguments: Trial on Mental Competency

1. Sufficiency of the Evidence.
(1a) Defendant contends the pretrial determination of competence was not supported by the evidence. This contention is without merit.
A defendant is presumed to be mentally competent unless at the Penal Code section 1368 hearing it is proved by a preponderance of the evidence that he is mentally incompetent. (Pen. Code, § 1369, subd. (f); People v. Superior Court (Campbell) (1975) 51 Cal. App.3d 459, 464 [124 Cal. Rptr. 158].) (2) In determining whether a person is presently sane within the meaning of section 1368, the following standard is to be applied: is the defendant capable of understanding the nature and purpose of the proceedings taken against him; does he comprehend his own status and condition in reference to such proceedings; is he capable to assist his attorney in conducting his defense, or able to conduct his own defense in a rational manner? (People v. Pennington (1967) 66 Cal.2d 508, 518-519 [58 Cal. Rptr. 374, 426 P.2d 942]; People v. Crosier (1974) 41 Cal. App.3d 712, 716 [116 Cal. Rptr. 467].) (3) On appeal, the finding of the trier of fact upon the issue of competency to stand trial cannot be disturbed if there is any substantial and credible evidence in the record to support the finding. (See People v. Belcher (1969) 269 Cal. App.2d 215, 220 [74 Cal. Rptr. 602].)
(1b) Viewing the record in the light most favorable to the People, as the party who prevailed below, and presuming in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence (see People v. Crosier, supra, 41 Cal. App.3d at p. 717), defendant's "present sanity" or competency to stand trial was clearly established by the testimony of the two psychiatrists standing alone. (See People v. Belcher, supra, 269 Cal. App.2d at p. 221; see also, People v. Cisneros (1973) 34 Cal. App.3d 399, 406-407 [110 Cal. Rptr. 269].)[3] The defendant's bare allegation of insufficiency of the evidence is simply not supported by the record. (Cf. People v. Sanchez (1969) 275 Cal. App.2d 226, 231 [79 Cal. Rptr. 781].)

*609 2. Further Psychiatric Testing

(4) Defendant contends the trial court should have, sua sponte, ordered further psychiatric testing in view of the fact that "[t]his multi-count case presented the court with a defendant with an I.Q. in the mentally retarded range." (See Pen. Code, §§ 1368, 1370.1; cf. People v. Melissakis (1976) 56 Cal. App.3d 52, 62 [128 Cal. Rptr. 122].) We are satisfied there was no error.
Prior to the jury trial on the question of defendant's competency, the trial court had already read the two reports submitted by the psychiatrists and the comprehensive background informational files, upon which the psychiatrists apparently based some of their conclusions. It is clear from the court's remarks[4] that it had no doubts whatsoever of defendants competency to stand trial, and thus there was no duty to order further psychiatric testing. (See People v. Hays (1976) 54 Cal. App.3d 755, 759-760 [126 Cal. Rptr. 770]; People v. Acosta (1971) 18 Cal. App.3d 895, 900 [96 Cal. Rptr. 234]; cf. People v. Sanchez, supra, 275 Cal. App.2d at p. 231.) Quite simply, there was just nothing before the court to demonstrate any need for further testing. (See People v. Hays, supra, 54 Cal. App.3d at pp. 759-760; People v. Cisneros, supra, 34 Cal. App.3d at p. 407.)[5]

3. Admonition
Penal Code section 1122 provides: "The jury must also, at each adjournment of the court before the submission of the cause to the jury, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves or with anyone else on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them."
(5a) The defendant contends that since the jury had received only one admonition under section 1122, and that one during the voir dire examination of the prospective jurors, the failure to give the required admonishment at the end of the first day of the competency trial *610 constituted prejudicial error. This contention misstates the facts. It is also without merit.
(6) In accordance with section 1122, the jury must be admonished upon adjournment at the end of the day when the proceedings are to be continued to the next day. (People v. Moore (1971) 15 Cal. App.3d 851, 852-853 [93 Cal. Rptr. 447].) However, error in failing to give the required admonition does not require reversal unless the defendant calls the trial court's attention to the omission at the time of the adjournment, or unless the defendant on appeal affirmatively points to prejudice resulting from the omission. (Ibid. fn. 1; People v. Fairchild (1967) 254 Cal. App.2d 831, 839 [62 Cal. Rptr. 535], cert. den., 391 U.S. 955 [20 L.Ed.2d 870, 88 S.Ct. 1861].)
(5b) Here, the court did fail to admonish the jury at the end of the first day of the trial on the issue of competency. Defendant, however, did not call this omission to the attention of the trial court.
Moreover, the jurors had been fully admonished not to talk among themselves or with anyone else concerning the case and not to form an opinion as to the verdict until the case was finally submitted to them. This admonition was given not once, as stated by defendant, but on three separate occasions; during voir dire of the prospective jurors at about 2:30 p.m.; before a recess taken at 3:54 p.m.; and before a recess taken at 4:28 p.m. The proceedings were adjourned at 5 p.m. and the jury sent home. Under these circumstances, the failure to give the statutory admonition at the time of adjournment was clearly harmless. (See People v. Jones (1967) 254 Cal. App.2d 200, 223 [62 Cal. Rptr. 304].) Furthermore, defendant has failed to articulate how prejudice resulted from the irregularity, and hence the error must be regarded as harmless. (People v. Gastelum (1965) 237 Cal. App.2d 205, 207 [46 Cal. Rptr. 743].)

4. Evidence of a Subsequent Act
(7a) Defendant contends the prosecutor committed prejudicial misconduct at the competency trial by introducing into evidence the fact that defendant had attempted to escape from jail and had been charged accordingly. The defendant relies upon the general rule that evidence of other crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged. (People v. Sam (1969) 71 Cal.2d 194, 203 [77 Cal. Rptr. 804, 454 P.2d 700]; People v. Kelley (1967) 66 Cal.2d 232, 238-239 [57 Cal. Rptr. *611 363, 424 P.2d 947].) Defendant argues that due process requires the application of this rule to a jury trial on the issue of competency. Defendant concedes that no authority has been found for this exact proposition.[6] This argument lacks substance for several reasons.
First, since no objection was raised, the point is not cognizable on appeal. (People v. Simms (1970) 10 Cal. App.3d 299, 315, fn. 6 [89 Cal. Rptr. 1].) Moreover, on cross-examination, defense counsel went into the alleged escape in greater detail. His conduct amounts to acquiescence in the action taken, and thus he waives his right to attack it. (People v. Williams (1968) 265 Cal. App.2d 888, 899 [71 Cal. Rptr. 773].)
In any event, there was no prosecutorial misconduct. (8) The term "misconduct" implies a dishonest act or an attempt by counsel to persuade the court or jury by use of deceptive or reprehensible methods. (People v. Chojnacky (1973) 8 Cal.3d 759, 766 [106 Cal. Rptr. 106, 505 P.2d 530].) (7b) The questioning complained of arose in the following setting: Prior to calling Wright as a witness, the prosecutor made an offer of proof to the effect that several persons would be called in an effort to show that defendant was feigning mental retardation. The prosecutor carefully and explicitly explained to the court and the defense that he intended to call Wright and that he was a coconspirator with defendant in an escape attempt. There can certainly be no claim of surprise or showing of bad faith when the prosecutor subsequently asked Wright if defendant was his coconspirator. Clearly there was no misconduct. (See People v. Bandhauer (1970) 1 Cal.3d 609, 616 [83 Cal. Rptr. 184, 463 P.2d 408] [reference to defendant prisoner's escape properly made to refute psychiatric testimony that he lacked capacity to plan and deliberate].)[7]

5. Instruction as to Evidence of other Crimes
(9) The defendant contends the failure of the court to instruct as to evidence of other offenses was prejudicial error.
*612 As a general rule, evidence of other crimes is admissible only for limited purposes in regular criminal trials. (See People v. Williams (1970) 11 Cal. App.3d 970, 978 [90 Cal. Rptr. 292]; CALJIC No. 2.50.)
As we have previously explained, the evidence of defendant's attempted escape from jail was introduced at the defendant's competency trial, not at his guilt trial. The only question before the jury was whether defendant was competent to stand trial, and the jury was so instructed. It must be presumed the jurors observed and applied the instructions given them. (People v. Valerio (1970) 13 Cal. App.3d 912, 925 [92 Cal. Rptr. 82].) We conclude that the evidence could not have improperly influenced the jury's verdict; therefore, the court was under no duty to give such instruction.

6. Effective Assistance of Counsel
The defendant contends he was denied adequate assistance of counsel at the mental competency jury trial since counsel failed to object and request an admonition and limiting instruction with respect to the subsequent offense of attempted escape. The contention is devoid of merit.
(10) The rules regarding such claim are well established. To justify relief on this ground an extreme case must be disclosed. It must appear that counsel's lack of diligence or competence reduced the trial to a farce or sham. Moreover, defendant has the burden of establishing his allegation of inadequate representation not as a matter of speculation but as a demonstrable reality. (People v. Reeves (1965) 64 Cal.2d 766, 774 [51 Cal. Rptr. 691, 415 P.2d 35]; cert. den., 385 U.S. 952 [17 L.Ed.2d 229, 87 S.Ct. 332]; see People v. Najera (1972) 8 Cal.3d 504, 516-517 [105 Cal. Rptr. 345, 503 P.2d 1353].)
This allegation of defendant's amounts to nothing more than sheer speculation. The fact that counsel did not interpose an objection does not indicate either incompetence of counsel or unfairness to the client. (People v. Jenkins (1975) 13 Cal.3d 749, 755 [119 Cal. Rptr. 705, 532 P.2d 857]; People v. Hoffmann (1970) 7 Cal. App.3d 39, 45 [86 Cal. Rptr. 435].) As stated in People v. Saidi-Tabatabai (1970) 7 Cal. App.3d 981, 988-989 [86 Cal. Rptr. 866]: "A direct appeal, where the appellate court knows only what transpires in the courtroom is a poor vehicle for the assertion of a claim of incompetence except in the clearest of cases, such as *613 Ibarra." A careful review of the record here reveals no error. (See People v. Thomas (1974) 43 Cal. App.3d 862, 869 [118 Cal. Rptr. 226].)[8]

Arguments: Trial on Criminal Charges

1. Effective Assistance of Counsel
(11) Defendant contends that he was denied effective assistance of counsel at his guilt trial because his attorney failed to make a motion to sever (for purposes of trial) the numerous charges contained in the four separate informations which were consolidated for trial. He argues: "The prejudice lies in being tried for seven offenses wherein the evidence of most offenses would not be admissible for any purpose during a trial on the other offenses."
The record is not clear as to what position defense counsel took on the consolidation motion. However, even conceding that counsel did not make a motion to sever, defendant has not established how the consolidated trials prejudiced him for the purposes of showing constitutionally inadequate representation of counsel. (See authorities cited above.) Counsel's failure to make a severance motion under the circumstances of this case does not demonstrate inadequacy. (See In re Saunders (1970) 2 Cal.3d 1033, 1042 [88 Cal. Rptr. 633, 472 P.2d 921].) We should not attempt to second-guess trial counsel. (See People v. Meals (1975) 48 Cal. App.3d 215, 223-224 [121 Cal. Rptr. 742].) Furthermore, in our opinion defendant suffered no prejudice from the consolidation of all charges since the evidence against defendant was so overwhelming as to each individual count. (See People v. Renier (1957) 148 Cal. App.2d 516, 520 [306 P.2d 917].)

2. Conviction for Receiving Stolen Property
(12) In information No. 15147, defendant was charged in count I with grand theft of Jacobs' purse, in count II with grand theft of her firearm, and in count III with receiving stolen property, namely a 1923 silver dollar. After the People had rested, the court ruled that the offense charged in count I must be limited to a misdemeanor since there was no showing that the value of the property stolen exceeded $200. (See Pen. Code, §§ 487 and 488.)
*614 Defendant contends that his conviction for receiving stolen property (count III; Pen. Code, § 496), must be reversed. The Attorney General concedes the point and we concur. The coin which was the object of the charge of receiving stolen property had been inside the purse when it was stolen from Jacobs' car. It is well established that one may not ordinarily be convicted of stealing, and receiving, the same stolen property. (People v. Donnell (1975) 52 Cal. App.3d 762, 768 [125 Cal. Rptr. 310]; People v. Briggs (1971) 19 Cal. App.3d 1034, 1036 [97 Cal. Rptr. 372].)
Where the defendant cannot be simultaneously guilty of both crimes, both convictions are vulnerable to reversal where the reviewing court cannot ascertain what verdict would have been returned by a properly instructed jury. (People v. Perez (1974) 40 Cal. App.3d 795, 800 [115 Cal. Rptr. 405].)[9] However, since there is overwhelming evidence that defendant stole the purse and its contents, and there is no evidence whatsoever that defendant received the coin from someone else, only the charge of receiving need be reversed.[10] (Id. at p. 801.)

3. Grand and Petty Theft
As we have observed, defendant's conviction for petty theft, the stealing of the purse (count I), and his conviction for grand theft, the stealing of the gun (count II), were both based on the act. The defendant contends, and the Attorney General concedes, that defendant may not be punished for two crimes involving the same act. (Pen. Code, § 654; People v. Bailey (1974) 38 Cal. App.3d 693, 701 [113 Cal. Rptr. 514]; People v. Taylor (1969) 2 Cal. App.3d 979, 985 [83 Cal. Rptr. 119].) The established procedure for avoiding multiple punishment in a situation where section 654 applies is to stay execution of the less seriously punishable offense. (People v. Williams (1975) 51 Cal. App.3d 65, 67 [123 Cal. Rptr. 891]; People v. DeVaney (1973) 33 Cal. App.3d 630, 638 [109 Cal. Rptr. 276].) Since the crime of petty theft carries a lesser punishment than that of grand theft (Pen. Code, §§ 489 and 490), we shall stay execution of sentence on count I, petty theft (information No. 15147).

4. Grand Theft Gun: Intent
(13) The defendant was found guilty of grand theft of a firearm as charged in count II (information No. 15147). (Pen. Code, § 487, subd. 3.) *615 He notes that theft requires the specific intent to steal, i.e., to appropriate the property of another and permanently deprive him of its possession. (People v. Turner (1968) 267 Cal. App.2d 440, 443-444 [73 Cal. Rptr. 263, 38 A.L.R.3d 940].) Since there is no evidence that defendant had the specific intent to steal the firearm he argues, the conviction for grand theft cannot stand.
To complete the crime of grand theft, the intent to steal or take the property is necessary in addition to the actual stealing or taking. (People v. Arriola (1958) 164 Cal. App.2d 430, 433-434 [330 P.2d 683].) The evidence admits of no doubt that defendant intended to steal the purse. In doing so, we are of the view that he intended to steal the contents of the purse, in this case the gun. (See People v. Quiel (1945) 68 Cal. App.2d 674, 678 [157 P.2d 446].)[11] We conclude that the defendant was properly convicted of grand theft of the gun.

5. Sentencing under Penal Code section 1168
Defendant contends that the trial court erroneously ruled with respect to defendant's motion for sentencing pursuant to Penal Code section 1168.[12]
This argument is based entirely on the following entry in the clerk's transcript: "Motion by Krup [defense counsel] under Section 1168 of the Penal Code, the Court leaves that matter to the director of corrections."
Defendant maintains the court "apparently" felt it had no authority to initiate section 1168 proceedings.[13]
There is absolutely nothing in the record to justify such an inference. This contention amounts to nothing more than sheer guess work on the part of the defendant and need not be considered here. (See People v. Walker (1967) 247 Cal. App.2d 554, 563 [55 Cal. Rptr. 726].)
*616 The judgment is reversed as to count III of information No. 15147 (receiving stolen property). The execution of the sentence for count I of information No. 15147 (petty theft) shall be stayed pending the finality of the judgment and sentence as to count II (grand theft, firearm), such stay to become permanent when service of sentence as to count II is completed. The trial court is directed to prepare and furnish to the Director of the Department of Corrections an amended abstract of judgment reflecting the modification as to count I. The remainder of the judgment is affirmed in its entirety.
Puglia, P.J., and Evans, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied December 22, 1976.
NOTES
[1] Prior to trial, defendant filed motions to suspend all proceedings until a determination could be made of his mental competence and retardation (Pen. Code, §§ 1368, 1370.1; see People v. Crosier (1974) 41 Cal. App.3d 712, 716 [116 Cal. Rptr. 467]). The court appointed Drs. Raitt and Cole to make an evaluation. The reports of the two doctors were admitted into evidence. Thereafter, the defendant requested a jury trial on the "sanity phase." After hearing the evidence, the jury found defendant to be mentally competent. (See Hale v. Superior Court (1975) 15 Cal.3d 221, 226-227 [124 Cal. Rptr. 57, 539 P.2d 817].)
[2] The silver dollar was the subject of the charge and conviction of receiving stolen property.
[3] We note that the defendant originally entered a "not guilty" plea. After being housed in jail with Wright, and after Wright had entered a plea of not guilty by reason of insanity, the defendant changed his plea to "not guilty by reason of insanity," and told others of his purpose in doing so. Thus, there is a strong inference that defendant's claim of incompetency was a mere sham.
[4] The trial court, on two occasions, commented that in its opinion the defendant was entirely aware of what was going on.
[5] The words of the court in People v. Gilberg (1925) 197 Cal. 306, 310 [240 P. 1000], are apropos: "[T]here must exist reason to believe that the claim of insanity made on behalf of the accused is genuine and not simulated as a means of defeating or delaying the law's penalties in cases where all other means of evading punishment would seem hopeless."
[6] Questions as to the admissibility of other-crimes evidence must be determined out of the presence or hearing of the jury. (People v. Banks (1970) 2 Cal.3d 127, 137, fn. 6 [84 Cal. Rptr. 367, 465 P.2d 263].) Thus, defendant submits the prosecutor committed misconduct by asking the question concerning the attempted escape.
[7] The Attorney General also makes a persuasive argument that defendant was not prejudiced since the evidence in question was admitted at defendant's trial as to competency, a special proceeding entirely foreign to the question of guilt, and not at his trial on the criminal charges. (See Tarantino v. Superior Court (1975) 48 Cal. App.3d 465, 469 [122 Cal. Rptr. 61]; see also, In re Shaw (1953) 115 Cal. App.2d 753, 756 [252 P.2d 970].) In addition, the jury was properly instructed as to the narrow limits of their inquiry.
[8] It could well be that defense counsel wanted evidence of the escape attempt on the record as a trial tactic, for he later undertook to illustrate to the jury the ludicrousness of the attempt.
[9] The trial court erroneously refused to instruct the jury that defendant could not be found guilty of both stealing and receiving the same item. (See People v. Perez, supra, 40 Cal. App.3d at p. 800.)
[10] The defendant concedes the point.
[11] The Attorney General likens this situation to the doctrine of "transferred intent." Under this theory, when a person purposefully attempts to kill one person but by mistake kills another instead, the law transfers the felonious intent from the object of the assault to the actual victim. This theory has some appeal here for it places full criminal responsibility upon the actor who violates the law. (See People v. Carlson (1974) 37 Cal. App.3d 349, 356 [112 Cal. Rptr. 321].)
[12] This section generally authorizes the trial court to recall the sentence and resentence the defendant after diagnostic study and recommendation.
[13] The logical inference is to the contrary, i.e., the court refused to implement such procedures.