Filed 12/21/20  P. v. Sumler CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ELAJAH SUMLER,<br><br>  Defendant and Appellant. | B304018<br><br>(Los Angeles County<br> Super. Ct. No. BA459155) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark S. Arnold, Judge.  Affirmed.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

A jury found defendant and appellant Elajah Sumler guilty of damaging jail property and found true the allegation the damage was in excess of $950.  Defendant does not challenge the evidence in support of his conviction or raise any trial errors.  Rather, he challenges only two pretrial rulings from September 27, 2019:  the trial court's order finding him competent to stand trial and the court's order revoking his right to represent himself.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

While in custody at the Twin Towers Correctional Facility, defendant yelled at a deputy from inside his cell and threatened to "gas" him (throw feces, urine or other bodily fluid).  When the deputy began to tape plastic up on the cell door to prevent fluids from passing through, defendant repeatedly kicked the lower glass panel in the door, cracking it.  The glass used to repair the window was a type of shatter-resistant glass specially approved by the California Department of Corrections and Rehabilitation for use in custodial facilities and the total cost of repair was in excess of $1,700.  Defendant denied threatening to gas the deputy or having any intent to break the window, although he admitted kicking it several times.

Defendant was charged with one felony count of damaging jail property in violation of Penal Code section 4600, subdivision (a).  It was alleged the damage was in excess of $950.  It was also alleged defendant had suffered three prison priors (§ 667.5. subd. (b)).  The prison priors were subsequently dismissed.

At the preliminary hearing, defendant's request to represent himself was granted.

At the next hearing, the court told defendant it appeared advisable for standby counsel to be appointed. Defendant said if that was to occur, he would want his attorney in two other pending cases, Deputy Alternate Public Defender Alissa Sterling, to be appointed in that capacity. Defendant also complained to the court he was not being provided with necessary materials in custody to represent himself. The court said the fact he was in the high observation housing unit was complicating the process. No appointment of standby counsel was made at that time.

On June 21, 2019, defendant reiterated his complaint about not having access to what he needed to represent himself and that the deputies at the jail were using his "mental health status" against him. Defendant said he had been prescribed Seroquel (an antipsychotic medication) but was refusing to take it. He told the court, "You hear I am talking I am cognitive. [¶] I am not hallucinating. They are trying to make it seem like I am not eating as much as we are going to take away your rights and try to make me incompetent. Whatever they are trying to do." The court addressed several other medical requests by defendant, including that the jail provide him with vegan meals.

On July 8, 2019, defendant again said he was not able to get the resources he needed in jail to represent himself, that he still was not being provided a vegan diet and that he needed help subpoenaing his medical records for trial. The court explained that defendant was responsible for sending his own subpoena. At defendant's request, the case was continued to August.

In August 2019, defendant reported to the court that his two other cases might be resolved. Defendant agreed to waive time again and the case was put over for another 30 days.

On September 10, 2019, Attorney Sterling, who represented defendant in his two other cases, appeared at the hearing with defendant. The court asked defendant about his refusal to come to court earlier in the day. Defendant denied refusing and said the deputies told him the appearance had been canceled and would not transport him. Defendant then listed various complaints about his custody status and various medical issues, including a claim that he had been pepper-sprayed in the face.

The court made reference to some sort of homemade glasses defendant was wearing in court. Defendant responded, "I walk by faith and not by sight, so these glasses are not deterring my view in the slightest. My view is only deterred basically because I got pepper sprayed directly in my eyes. I could see out of these glasses, that's why I made them. I have crafted them specifically to be seen out of."

The court noted defendant's "bizarre[]" manner of clothing. Defendant first indicated it was for his religion and then later said, "I do fashion, so then, like, you know, like, let's say I wanted to create my defense—part of my defense, just make my own style, you know, because we use civilian clothes during trial. So it's like instead of wearing civilian clothes, this is kind of the epitome of me correlating everything I've seen and learned since I've been in jail all together, based upon the style I had input on. It's called infinite style."

The court asked defendant to allow Ms. Sterling to be appointed to represent him. Defendant made a somewhat rambling statement and said he no longer wanted her to represent him in any of his cases, apparently because she had declared a doubt as to his competency in those cases. Defendant

4

said he wanted a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118.

Defendant said, in part, that the "specific things that I want to be conveyed because proof of my innocence with every, you know, piece of evidence. I wanted to suppress all evidence because she didn't want to testify about certain stuff and make them testify and provide documents to prove certain stuff that I wanted to compel. And then if they were to leave out anything, I was going to file a motion to dismiss the case based upon destruction of evidence because I feel like every piece of testimony, everything that they say in that police report they have to testify and provide proof—everything that you're saying. But they're not—and she didn't want to do that in trial."

Ms. Sterling advised the court that a doubt had been declared as to defendant's competence in his other cases and that a psychiatrist familiar with defendant from previous evaluations (Dr. Chen) had been appointed to evaluate defendant again. She also said that proceedings had been suspended all of last year in those cases for mental health reasons.

The court agreed to entertain defendant's request for a *Marsden* hearing and cleared the courtroom. Defendant again made various rambling statements. The court interjected and said defendant was not making any sense, "You're incomprehensible." The court repeated its concern about defendant's competence based on his rambling, rapid speech and his tendency to jump from subject to subject without completing a coherent thought. The court told defendant he had not identified anything that "impinge[d] on Ms. Sterling's ability to effectively represent [him]." The court said it wanted to know what the

psychiatrist had to say before it would revoke defendant's in propria persona status.

Once back on the record, the court ordered the criminal proceedings suspended pending the completion of Dr. Chen's report. Defendant asked if he was being evaluated again for his competence and the court said yes. Defendant responded, "Oh, okay. I appreciate that. I sometimes—I don't feel like I'm all that competent as well. Sometimes."

The parties returned on September 27, 2019. Ms. Sterling appeared with defendant and confirmed with the court that Dr. Chen, the appointed psychiatrist, had evaluated defendant and stated her opinion that he was competent to stand trial. The court reinstated criminal proceedings. Ms. Sterling told the court that defendant wanted the case set for trial.

The court appointed Ms. Sterling as counsel for defendant in the present case. Defendant interrupted and said "[y]ou're revoking my pro per status?" The court said it was and explained that a finding of competence to stand trial is different than competence to represent oneself at trial. Defendant responded, "All right. Well, that's fine."

When the parties returned for pretrial on October 31, 2019, the court said it wanted to clarify for the record the grounds for denying defendant's in propria persona status. The court explained, "I reviewed the court file in its entirety, including a report from Dr. Chen, C-H-E-N. The defendant has serious, major mental illness, specifically bipolar disorder. He was found incompetent on July the 1st of 2017. He was hospitalized on July 23rd for being gravely disabled and a danger to himself. He thought the FBI and the L.A. County Sheriff's Department were out to get him. [¶] He was incompetent for the periods of

November 13, 2017 through December 12, 2017; April 23, 2018 through June the 4th, 2018; September 18th, 2018 through December 24th of 2018. [¶] As of August the 13th of 2019, [defendant] has been diagnosed with anti-social personality disorder, unspecified impulse control disorder, and unspecified mood disorder. [¶] Also, my experiences with him, he just rambles from subject to subject." The court also noted that defendant had refused to come to court and was present in a restraint chair. The court said that because of defendant's mental health status and the way he behaves, it did not believe defendant was competent to represent himself even though he was competent to stand trial.

Defendant again denied he had refused to come to court and that he was not in a restraint chair but just a regular wheelchair because of a problem with his leg.

The court asked about whether there was an offer by the prosecution. Ms. Sterling said the prosecution offered to resolve all three cases if defendant pled to a violation of Penal Code section 69 and did ODR but defendant refused. Ms. Sterling said she did not make a counteroffer because there was no offer she could propose that would have been better than what the prosecution offered.

The case was tried to a jury in December 2019. The jury found defendant guilty as charged. The court sentenced defendant to the midterm of two years in county jail. Defendant was given credit for 730 days of presentence custody credits and ordered released for time served. The court ordered restitution in the amount of $1,692.63.

This appeal followed.

## DISCUSSION

Defendant contends the trial court erred both in finding him competent to stand trial and in revoking his right to represent himself.

A defendant is presumed competent to stand trial, unless the contrary is established by a preponderance of the evidence. (*People v. Campbell* (1976) 63 Cal.App.3d 599, 608; see also Pen. Code, § 1369, subd. (f).) "A defendant is deemed incompetent to stand trial if he lacks ' " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [or] a rational as well as factual understanding of the proceedings against him [or her].' " ' " (*People v. Lightsey* (2012) 54 Cal.4th 668, 690, second brackets added; accord, *People v. Mickel* (2016) 2 Cal.5th 181, 194–195; see also § 1367, subd. (a).)

In reviewing a finding of competency, we are governed by the substantial evidence test. (*People v. Marshall* (1997) 15 Cal.4th 1, 31 (*Marshall*).) Viewing the evidence in the light most favorable to the court's ruling, we conclude there is substantial evidence supporting the competency finding.

At the hearing on September 27, 2019, defense counsel confirmed with the court that a report had been prepared by Dr. Chen and submitted to the court. Ms. Sterling said the doctor's opinion "is that at this time [defendant] is competent to proceed forth with trial." The court reinstated criminal proceedings and asked how defendant wished to proceed. Defendant indicated a desire to immediately proceed with setting a trial date. The court and counsel then discussed setting dates in all three of defendant's pending cases. The court's minute order for that date states that "[t]he court finds that the defendant is presently mentally competent to stand trial within

8

the meaning of Penal Code section 1368 . . . .  Criminal proceedings resumed."

The Supreme Court in *People v. Marks* (1988) 45 Cal.3d 1335, 1343 explained that "no 'magic words' are required of the trial court" in making a competency finding and resuming proceedings.  But, a trial court must "expressly and unmistakably state on the record, either orally or in writing, its determination as to whether the defendant is mentally competent to stand trial."  (*Ibid.,* italics omitted.)  Defendant contends the trial court did not review and evaluate the expert's report before declaring him competent but instead relied on defense counsel's representation concerning the expert's conclusion that defendant was competent.

We agree with defendant the record of proceedings on September 27, 2019, suggests the court had not read the expert's report but simply received it from defense counsel that day.  Defense counsel said, "Dr. Chen has written a report.  I provided a copy to the court to be placed in an envelope under seal."  We also recognize that in a busy criminal courtroom where the same counsel frequently appear before the same judge, many preliminary proceedings are not reported on the record; and after going on the record, counsel and the court may use familiar "shorthand" language to summarize the informal proceedings held just before going on the record.  Since defense counsel gave the unsealed report to the court, it may be the case that the court reviewed it before going on the record.

Even if the court did not read the report before going on the record on September 27, 2019, substantial evidence supports the court's finding that defendant was competent to stand trial.  The court had observed defendant at several hearings dating back

several months to early July 2019 that raised the court's concerns about his competency. Upon being advised that a psychiatrist had already been appointed in defendant's other pending criminal cases to render an opinion on competency, the court suspended proceedings and prudently awaited the expert's report before concluding it was reasonable and appropriate to reinstate criminal proceedings. Additional support for the court's decision was provided by the court's clarifying statement made at the subsequent hearing on October 31, 2019, at which the court stated it had read Dr. Chen's report and reviewed the entire file, after which the court made a long and full record of why it had revoked defendant's in propria persona status. The court's October 31, 2019 findings also support its competency finding.

The record also supports the trial court's ruling revoking defendant's in propria persona status.

In *Indiana v. Edwards* (2008) 554 U.S. 164, 177–178 (*Edwards*), the high court held the "Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* [*v. United States* (1960) 362 U.S. 402] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."

Subsequently, in *People v. Johnson* (2012) 53 Cal.4th 519, 528 (*Johnson*), our Supreme Court held that "trial courts may deny self-representation in those cases where *Edwards* permits such denial."

10

*Johnson* instructs that the standard trial courts should employ when considering whether to deny or revoke self-representation "is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Johnson, supra,* 53 Cal.4th at p. 530.)  In resolving this question, trial courts *may*, but are *not required* to, "order a psychological or psychiatric examination to inquire into that question." (*Ibid*.)  *Johnson* advised trial courts to be cautious about denying self-representation without the benefit of an expert evaluation, but explained that a judge's " 'own observations of the defendant's in-court behavior will also provide key support for an incompetence finding and should be expressly placed on the record.' " (*Id*. at pp. 530–531.)

In this regard, substantial deference is appropriately shown to a trial judge's decision to revoke a defendant's in propria persona status especially "when, as here, the same judge has observed the defendant on numerous occasions." (*Johnson, supra,* 53 Cal.4th at p. 531.)  A trial judge " 'will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.' " (*Id*. at p. 532, quoting *Edwards, supra,* 554 U.S. at p. 177.)

Here, the court had observed defendant's behavior at numerous hearings and repeatedly expressed concern about his incoherent statements, rapid speech, disorganized thoughts, bizarre behavior (such as wearing peculiar clothing, singing as he arrived in court and again as he left court)—concerns supported by our review of the record.  While the court did not appoint an expert to render an opinion specifically on defendant's ability to represent himself, the court nonetheless waited for the report

11

from Dr. Chen before making the decision to resume criminal proceedings and revoke defendant's in propria persona status before trial began.

We do not believe the trial court was dismissive of defendant's Sixth Amendment right to represent himself. Rather, given the court's stated concerns about defendant's mental status, the court's decision to revoke was in accord with the concerns expressed in *Edwards*: "[A] right of self-representation at trial will not 'affirm the dignity' of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel. [Citation.] To the contrary, given that defendant's uncertain mental state, the spectacle that could well result from his self-representation at trial is at least as likely to prove humiliating as ennobling. Moreover, insofar as a defendant's lack of capacity threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial." (*Edwards*, *supra*, 554 U.S. at pp. 176–177.)

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.

12