Filed 11/6/25  P. v. Crawford CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>REMI LAWRENCE CRAWFORD,<br><br>　　　Defendant and Appellant. | A172183<br><br>(Contra Costa County<br>　Super. Ct. No. 01-24-03363) |

Defendant Remi Lawrence Crawford appeals from orders (1) committing him to the Department of State Hospitals (DSH) after a finding of incompetency, and (2) authorizing the involuntary administration of antipsychotic medication.  Crawford's appointed appellate counsel filed a brief finding no arguable issues but setting forth the applicable facts and law pursuant to *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 (*Ben C.*) and *People v. Blanchard* (2019) 43 Cal.App.5th 1020 (*Blanchard*).  Counsel informed Crawford that he could file a supplemental brief.  Crawford subsequently submitted a handwritten letter in which he generally refers to the competency proceedings, makes a vague assertion of an unspecified conflict of interest with one of the mental health professionals involved, lists his diagnoses and other medical issues, and states he is "looking forward to returning to society."

1

In addition, in response to this court's request for supplemental letter briefs concerning a question of mootness,[1] the parties appear to agree—as do we—that because Crawford has been removed from DSH custody and has been returned to the local jail facility pending further conservatorship proceedings, the portion of the appeal challenging his DSH commitment is moot. As to the remaining involuntary medication order, which is still in effect, and the predicate determination of incompetency, our discretionary review of the record discloses no arguable issue. We dismiss in part and affirm in part.

## BACKGROUND

On September 6, 2024,[2] Crawford was charged by felony complaint with elder or dependent adult abuse (Pen. Code,[3] § 368, subd. (b)(1)) with the use of a deadly weapon—a knife (§ 12022, subd. (b)(1); count 1) and criminal threats (§ 422, subd. (a); count 2), arising out of an incident involving his mother.

On September 18, the day scheduled for the preliminary hearing, Crawford's counsel expressed a doubt regarding Crawford's competency to stand trial. (§ 1368, subd. (b).) The trial court conducted an in camera proceeding, after which it declared a doubt and suspended criminal

---

[1] In his August 14, 2025, request for extension of time to file a supplemental brief, Crawford's appellate counsel represented, "Upon information and belief, the Contra Costa County Superior Court ordered [Crawford's] removal from the [DSH]," and Crawford "is currently booked in the Martinez Detention Facility." Thereafter, this court requested supplemental letter briefs on the issue of mootness that were later filed and are further referenced herein.

[2] Further unspecified dates are in 2024.

[3] Further statutory references are to the Penal Code.

proceedings pursuant to section 1368 et seq.; the court then set a September 25 hearing date for appointment of mental health evaluators.

On September 25, defense counsel informed the court that Crawford objected to the competency proceedings. Noting the objection, the trial court proceeded to appoint psychologists Dr. Kyle Van Gaasbeek and Dr. Lindsey Alvis to evaluate Crawford, with psychiatrist Dr. Patrick Wiita named as "the backup." Related reports were ordered due November 7, with a further hearing scheduled for November 13.

On October 17, the People filed a notice and ex parte application for order authorizing interim medication and setting an expedited hearing because, "in the absence of the recommended psychiatric medication, the emergency conditions are likely to recur." Specifically, the People alleged that Crawford suffered from schizophrenia, a mental disorder, and, as a result of that disorder, "lacks any insight into his current symptoms and need for medication, lacks capacity to consent to or refuse treatment, does not understand his diagnosis or the need for psychotropic medication, could not communicate a consistent decision regarding treatment with medication, and has been unable to discuss his current mental state in a rational manner." The People further asserted that Crawford had been prescribed medication for his mental disorder, but he "refuses or is unable to consent to the administration of the medication" and "[t]here has been a sudden and marked change in [Crawford's] mental condition so that action is immediately necessary for the prevention of serious bodily harm to [him] or others." The People explained that Crawford's treating psychiatrist, Dr. Ali Hummos, had "attempted to locate an available bed for [Crawford] in a community-based treatment facility; however, there was no bed available."

3

The allegations were supported by a confirming declaration from Dr. Hummos.

The trial court executed the proposed order granting the ex parte application on the same date.

At the expedited hearing on November 4, all parties stipulated that Dr. Brian Holoyd, who testified in favor of the petitioner and identified Crawford in court, was an expert in the field of psychiatric treatment and mental illness.[4] At the conclusion of the testimony, the trial court found by clear and convincing evidence that Crawford was determined to have a serious mental disorder; lacked the capacity to consent to or refuse psychiatric medication; is a danger to himself if not medicated; that the prescribed psychiatric medication is in Crawford's best medical interest; that Crawford had been advised of the risks, benefits, and alternatives to the medication; that Crawford's psychiatrist had considered the treatment alternatives and determined that there are no reasonable alternatives that will meet his needs, nor is there a less intrusive alternative to involuntary medication; and Crawford's psychiatrist had attempted to locate an available bed at a community based treatment facility.

The court further found that Crawford lacked the capacity to consent to or refuse medication and was a danger to himself and granted the motion for authorization of involuntary medication pursuant to section 2603, subdivision (c).

---

[4] The reporter's transcript for the November 4 hearing was not included in the record on appeal and cannot be generated because the associated court reporter is unavailable. The court's finding suggests that Dr. Holoyd's testimony was consistent with the declaration submitted by Dr. Hummos.

4

Subsequently, the appointed experts Dr. Alvis and Dr. Wiita[5] submitted their reports, in which both opined Crawford was not competent to stand trial, it was medically appropriate to treat him with antipsychotic medication, and that he did not have the capacity to make decisions about the medications. At the hearing on November 13, the parties "stipulate[d] that the reports may be deemed in evidence for competency purposes" and submitted on the question of competency without argument. Relying on the substance of the reports, the trial court found by a preponderance of the evidence that Crawford was not presently able to understand the nature and purpose of the proceedings against him or to assist and cooperate with counsel in presenting a defense. The proceedings remained suspended. The court referred Crawford to the Contra Costa Conditional Release program (CONREP) for a placement recommendation.[6] (§ 1370, subd. (a)(2)(B).)

On December 9, CONREP submitted a placement evaluation report recommending a DSH commitment. At the subsequent December 11 hearing, Crawford, through defense counsel, objected to the DSH recommendation and requested, without argument or citation to authority, a commitment to the "CONREP outpatient restoration treatment" program. The People disagreed, asserting, "there's sufficient information laid out in the CONREP report that he be committed to the [DSH]." Without additional argument, the parties submitted the matter; "[b]ased on the report," the court then committed Crawford to the DSH for a two-year period. (§ 1370, subd. (c)(1).) Citing the Alvis and Wiita reports, the court also found that Crawford met the criteria

---

[5] The record does not explain why "backup" expert Dr. Wiita submitted a report in lieu of the originally appointed Dr. Van Gaasbeek.

[6] At her request, the trial court also amended Crawford's mother's criminal protective order to be a peaceful contact order.

for involuntary administration of medication pursuant to section 1370, subdivision (a)(2)(B), specifying "capacity" and "dangerousness grounds."

Defense counsel objected to the issuance of an additional order for involuntary medication because "we have an IVM in place," but the court explained that the existing section 2603 order is only valid for six months and "the interaction" with section 1370, subdivision (a)(2)(B) "is not complete," so the court made section "1370 [subdivision] (a)(2)(B) findings as well."

Crawford timely appeals.

## DISCUSSION

As an initial matter, circumstances have changed since the filing of the initial briefs that render a portion of this appeal moot. Specifically, Crawford has been returned to local custody for potential conservatorship proceedings because DSH has determined "there was no substantial likelihood Mr. Crawford would regain competence." As Crawford's counsel represents, "Because [Crawford] cannot be returned to DSH custody under this commitment, the portion of the appeal challenging continued hospitalization is now moot." We agree. (§ 1370, subd. (b)(1)(A) ["If the report indicates that there is no substantial likelihood that the defendant will attain mental competence in the foreseeable future, custody of the defendant shall be transferred without delay to the committing county and shall remain with the county until further order of the court. . . . The court shall not order the defendant returned to the custody of the [DSH] under the same commitment"].) Because " ' "[a] reversal in such a case would be without practical effect," ' " we must dismiss that portion of the appeal. (*People v. Delong* (2002) 101 Cal.App.4th 482, 486.)

However, we agree with the parties that the trial court's December 11 involuntary medication order issued pursuant to section 1370,

6

subdivision (a)(2)(B) and the predicate incompetency determination are not moot and therefore address their appeal.[7]

In *Ben C.*, our Supreme Court held that "If appointed counsel in a conservatorship appeal finds no arguable issues, counsel . . . should (1) inform the court he or she has found no arguable issues to be pursued on appeal; and (2) file a brief setting out the applicable facts and the law." (*Ben C.*, *supra*, 40 Cal.4th at p. 544.) In addition, the "conservatee is to be provided a copy of

---

[7] As stated above, Crawford asserts two issues as the basis for his appeal: "(1) his commitment to the [DSH] after the trial court found him incompetent to stand trial, and (2) an order authorizing the involuntary administration of an antipsychotic medication." However, both Crawford's and the Attorney General's supplemental letter briefs appear to request consideration of a further sub-issue: the propriety of the trial court's determination of incompetency that predicates the challenged commitment and the December 11 involuntary medication order. In the Attorney General's supplemental brief of August 18, 2025, it states that Crawford is "appealing from both the finding of incompetency and an involuntary medication order." In Crawford's supplemental letter brief of August 22, 2025, he claims that his "transfer back to county custody moots only the narrow question of continued placement at DSH under the current commitment. But the appeal remains live; the incompetency finding and involuntary medication order still carry legal consequences and will affect the next proceedings in the trial court."

Although an appeal is ordinarily limited to the issues adequately raised and supported in an appellant's opening brief (Cal. Rules of Court, rule 8.204 (a)(1)), and those issues here challenge Crawford's DSH commitment and the December 11 involuntary medication order, because those orders rest on the trial court's underlying determination of competency, and the Attorney General does not assert the issue is forfeited, we exercise our discretion to also consider the competency determination. (See *Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 321 [appellate courts have discretion to consider arguments asserted in the trial court and not reasserted in an opening brief on appeal]; *People v. McCullough* (2013) 56 Cal.4th 589, 593 ["neither forfeiture nor application of the forfeiture rule is automatic," and "[c]ompeting concerns may cause an appellate court to conclude that an objection has not been forfeited"].)

the brief and informed of the right to file a supplemental brief." (*Id.* at p. 544, fn. 6.) The reviewing court may then dismiss the appeal if there are no arguable issues. (*Id.* at p. 544.) The *Ben C.* procedure applies to appeals of competency proceedings. (*Blanchard*, *supra*, 43 Cal.App.5th at pp. 1025–1026.)

Here, Crawford's appointed appellate counsel followed *Ben C.* and *Blanchard*. Counsel reviewed the record, found no arguable issues and so informed Crawford; filed his brief in this court and served Crawford with a copy; and informed Crawford that he could file a supplemental brief. Although counsel recognizes that, under *Ben. C.* and *Blanchard*, we are not required to independently review the record, she asks us to exercise our discretion to conduct an independent review. (*Ben C.*, *supra*, 40 Cal.4th at p. 544, fn. 7 [appellate court may choose to retain an appeal rather than dismiss it]; accord, *Blanchard*, *supra*, 43 Cal.App.5th at p. 1026.) We have done so.

The trial court's finding that Crawford was incompetent to stand trial was supported by substantial evidence in the form of the admitted experts' evaluations in which both Dr. Alvis and Dr. Wiita set forth the basis for their ultimate opinions that Crawford is not competent to stand trial. (See § 1367, subd. (a); see also *People v. Campbell* (1976) 63 Cal.App.3d 599, 608 ["On appeal, the finding of the trier of fact upon the issue of competency to stand trial cannot be disturbed if there is any substantial and credible evidence in the record to support the finding"].) The two reports made by independent evaluators were stipulated to be admitted into evidence, reached the same conclusion, and spurred no argument or clarification from either counsel who submitted the issue of competency to the court.

8

Those evaluations also supply substantial evidence to support the trial court's order authorizing the involuntary administration of antipsychotic medication because Crawford lacks the capacity to make decisions regarding antipsychotic medication, and his diagnosed severe mental disorder requires treatment with antipsychotic medication, without which, "it is probable that serious harm to the physical or mental health" to Crawford will result, and Crawford is a danger to others. (See § 1370, subd. (a)(2)(B)(i), (ii).) The involuntary medication order was further supported by the declaration of Crawford's own psychiatrist, Dr. Hummos, and Dr. Holoyd's expert testimony.

The record evinces no additional potential error. The trial court's incompetency determination and December 11 involuntary medication order are supported by unchallenged and substantial evidence; there remain no arguable issues on appeal.

## DISPOSITION

The orders finding Crawford incompetent to stand trial and authorizing the involuntary administration of antipsychotic medication are affirmed. The order committing Crawford to DSH is dismissed as moot.

9

DESAUTELS, J.

We concur:


RICHMAN, ACTING P. J.


MILLER, J.


*People v. Crawford* (A172183)