[Crim. No. 3695.   Second Dist., Div. One.   May 25, 1943.]

THE PEOPLE, Respondent, v. JESUS DUARTE FLORES, Appellant.

B. Warren Vinetz for Appellant.

Robert W. Kenny, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Respondent.

WHITE, J.—This appeal is prosecuted by defendant from a judgment of conviction of the crime of grand theft rendered against him after trial by the court sitting without a jury.

Stated in a light most favorable to the prosecution, as is required following a guilty verdict or decision, the facts as disclosed by the record are that about 10 o'clock on the evening of November 22, 1942, Mrs. Gladys Newberry, accompanied by a friend, parked her automobile at 1542½ Cassil Place in the Hollywood district of Los Angeles. The doors of the vehicle were not locked but the ignition was. When Mrs. Newberry and her friend returned for the automobile about 10:15 p. m., it had disappeared. Several days later it was recovered in a parking lot on North Figueroa Street several miles distant from Hollywood. At the trial Mrs. Newberry's friend testified that he was driving her automobile on the evening in question; that at the time he parked the car prior to its disappearance it was equipped with one rear vision mirror located on the top center of the front windshield; that the mirror was adjusted "So that I could see out the rear of the car" while seated in the driver's seat. This witness further testified that the front seat of the vehicle was wide enough to carry three passengers comfortably.

George O. Vincent, a finger print expert and attached to the scientific investigation division of the latent finger print section of the Los Angeles Police Department, testified that he photographed a finger print on the back of the rear view mirror; that such finger print was identical with the finger print he had made of the same finger on appellant's hand; that the photograph of the finger print taken on the back of the mirror indicated "the extreme end of the little finger was pointing toward the left-hand side of the car and slightly down."

Mrs. Maude Lathrop testified for the prosecution that she and her friend, Mrs. Jennie Wood, were walking in the vicinity of the place from which the automobile in question was stolen about 10 o'clock on the evening of the theft when an automobile, identified by her as being similar in make and type to the stolen car, stopped alongside the curb. Two young men alighted from the vehicle, came up behind the two ladies and grabbed their purses. This witness stated that she observed that the automobile was driven by a third party but could not state whether the driver was a man or woman. Mrs. Lathrop also identified the two men who took the purses as Robert Campos and Roberto Valles. This identification assumes importance because the record indicates that Valles, one of the men who was later arrested for the theft of the purses, testified at defendant's trial herein, while the other man identified by Mrs. Lathrop as participating in the larceny of the purses was killed while resisting arrest on the charge of stealing the automobile with which we are here concerned.

Appellant took the witness stand in his own behalf, testifying that he had known Robert Campos for about nine months but had only seen Roberto Valles twice; that on the night here in question he had retired about 9:30 p. m., because he was ill and for the further reason that he was on parole from state prison and the terms of his parole required him to be at home at a reasonable hour each night. Appellant further testified that on the night of November 22, 1942, Robert Campos called to see appellant at the latter's home about 10:30 or 11 p. m. At this time, appellant testified, he arose from bed, dressed and went down the alley to where the car was parked, to talk with Campos so that appellant's mother, who was asleep in the house, would not be disturbed. According to appellant, he and Campos sat in the automobile, the latter occupying the driver's seat while appellant sat alongside of him. He further testified that Campos urged him to go to a dance which he agreed to do, but the record indicates that he did not go away with Campos. However, it appears from appellant's testimony that he and Campos returned to the house where he supplied Campos with some clean clothing. While they were in the house and Campos was changing his clothing, appellant, according to his testimony, asked Campos about the automobile and finally was told that it was a stolen car. Appellant consistently denied that he stole the automobile or that he was ever in it except as heretofore

narrated. He steadfastly denied that he occupied the driver's seat at any time and that while he had no recollection of touching the rear view mirror, admitted that he might have done so. The police officer who arrested appellant and questioned him testified that appellant told him that he had never seen the stolen automobile and never had been in it. This appellant admitted, explaining his action in that regard by saying he was afraid of the officers ''because I have saw a lot of things going on in that Central Jail; all the boys they picked up they beat them up, even if they admitted some connection with something, and I didn't want to admit that I had anything to do with it at all, and had seen the stolen car, because he would want to take more out of me.''

The mother of appellant testified in his behalf stating that he returned home about 9 or 9:30 o'clock on the evening of November 22, 1942; that he was suffering from stomach ulcers; that she spoke to him about 10:45 p. m.; that she was unaware of anyone having visited her son that night but that he was at home throughout the entire night.

Roberto Valles, one of the men identified by Mrs. Lathrop as a participant in the theft of her purse, testified in appellant's behalf that he, Robert Campos and a girl friend of the latter, stole the automobile here in question on the night of November 22, 1942; that Campos' girl friend drove the vehicle and that appellant was not concerned in the theft of the automobile. When, at the time of his arrest, this witness was questioned by the police he too disclaimed all knowledge of the automobile or its theft.

■ It is first contended by appellant that the evidence is insufficient to support the judgment of conviction. The attorney general now, as did the trial court, attaches much evidentiary importance to the presence of appellant's finger print on the back of the rear vision mirror in the stolen car. Indeed, the trial court at the conclusion of the evidence announced his decision by simply stating ''The finger prints tell the tale. The Court adjudges the defendant guilty of the crime of grand theft as charged in the information.''

■ The essence of the crime of grand theft as here involved is the felonious stealing, taking or driving away the personal property of another, and our examination of the record has compelled the conclusion that the evidence did not warrant the decision of the court adjudging defendant guilty. The case for the prosecution was circumstantial. ■ While

it is true that the law makes no distinction between direct and circumstantial evidence in the degree of proof required for conviction, but only requires that proof of guilt be established beyond a reasonable doubt by evidence of the one character or the other, or both, nevertheless it is elementary law that circumstances relied upon to establish the guilt of one accused of crime must be consistent with that hypothesis and inconsistent with any other rational conclusion. ▇ At best the testimony concerning the finger print established only the fact that appellant was in the automobile, and that he admitted, but the evidence falls far short of the quantum necessary to overcome the presumption of innocence and to meet the burden resting upon the prosecution to establish guilt beyond a reasonable doubt of the gravamen of the offense of grand theft which is the asportation of the property. ▇ It is the law, as claimed by respondent, that if stolen property comes into the possession of a defendant shortly after being stolen, the failure of such person to show that such possession was honestly acquired is a circumstance tending to show guilt, but such an inference is not justified by the circumstances of this case for there was no evidence, direct or otherwise, to show that appellant was at any time in possession of the stolen property. ▇ Ordinarily, the deduction to be drawn from the circumstances shown in evidence is for the trier of facts, but in this instance it is manifest that every fact proven is consistent with the reasonable conclusion that the appellant did not participate in the theft of the automobile. There is, therefore, a failure of proof in particulars necessary to conviction of the crime of grand theft, and the question is one of law for the court. Appellant's testimony finds corroboration in the evidence given by Valles who admitted stealing the automobile and who, with Campos, was identified by Mrs. Lathrop as being the two men who emerged from the stolen vehicle and took the purses of herself and her friend shortly after the theft of the automobile. Even though we concede, as we are urged to do by respondent, that appellant's testimony concerning the manner in which his finger print got on the mirror was unsatisfactory, we are still confronted with the fact that giving to the finger print testimony all the probative force claimed for it by respondent, still it does not tend to establish any of the essential elements of grand theft. As is well said by the learned author of Wharton's Criminal Evidence (volume 2, sec. 915), ''cir-

cumstances, trivial in themselves, take on an exaggerated character the moment that suspicion is directed toward a person accused of a crime; and because of this tendency, no circumstances should be admitted that cannot be shown to have a direct and obvious relevancy to the crime charged.''

While the fact that an accused person has an opportunity to commit the crime with which he is charged may be a circumstance from which, in conjunction with other circumstances, guilt may be conjectured or inferred, it is nevertheless an established precept of law that an incriminating circumstance from which guilt may be inferred must not rest on conjecture. And by the same rule it is not permissible to pile conjecture upon conjecture.

We are not unmindful of the claimed profligate character of appellant, who admitted a prior conviction of a felony, but we are not now concerned with the guilt or innocence of appellant, further than to say that the evidence presented at his trial was insufficient to make out a case of grand theft as charged against him. As was said by this court in *People* v. *Braun,* 31 Cal.App.2d 593 [88 P.2d 728], at page 603, '' 'Though unfair means may happen to result in doing justice to the prisoner in the particular case, yet justice so attained is unjust and dangerous to the whole community.' (*Hurd* v. *People,* 25 Mich. 405.) . . . The acquittal of a guilty person is truly a miscarriage of justice, but the conviction of an innocent person through relaxation of those fundamental legal principles such as the one with which we are here concerned, would be a tragedy.''

The conclusion at which we have arrived with reference to the insufficiency of the evidence to sustain the judgment of conviction herein renders it unnecessary to give consideration to another ground urged by appellant for a reversal.

No man's liberty should be taken from him upon such a flimsy showing as characterizes the evidentiary features of this case.

The attempted appeal from the sentence is dismissed and for the reasons herein stated, the judgment is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.