Filed 1/7/16  P. v. Trujillo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D067338 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS274090) |
| PEDRO JAVIER TRUJILLO, | |
| Defendant and Appellant. | |

APPEALS from a judgment of the Superior Court of San Diego, Stephanie Sontag, Judge.  Affirmed.

Theresa O. Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson, Deputy Attorney General, for Plaintiff and Respondent.

A jury found Pedro Trujillo guilty of first degree burglary and grand theft.  In a bifurcated proceeding, Trujillo admitted he suffered four of five alleged prison priors.

(Pen. Code, § 667.5, subd. (b).)  After an evidentiary hearing, the court found the fifth prior true.  The court imposed a seven-year prison term.

On appeal, Trujillo challenges the sufficiency of the evidence showing he committed the burglary and theft crimes.  This challenge is without merit and we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2014, Venus Olaes moved into a home in which her boyfriend, Michael Bair, was living.  The next afternoon, the two-story house was burglarized when no one was home.  Trujillo was arrested about one month later based on fingerprint evidence found in the downstairs bathroom, on a television set, and on a hard hat found outside the home.

At trial, the prosecutor presented evidence that about two months before the burglary, Bair retained contractor Jesus Cruz to perform various projects in his home, including a kitchen remodel, new flooring, and painting.  Cruz hired Trujillo to assist in this work.  Trujillo worked on the kitchen cabinets and living room windows, and helped mount a big screen television in the family room.  Trujillo stopped working for Cruz about one week before the burglary.

On the day of the burglary, Bair left for work early in the morning.  Olaes stayed home, putting away her items and cleaning the house.  She spent about 25 to 30 minutes cleaning the downstairs bathroom—sweeping, cleaning the countertops, washing the mirror, and putting items in the bathroom closet.  The bathroom window was partially

2

open.  Olaes did not see any smudges or marks near the bathroom window or on the wall next to the window.

Olaes left the house in the early afternoon.  At the time, the bathroom window remained partially open and all of the doors were locked.

Olaes returned to the house at about 4:45 p.m. and attempted to enter through the garage by using a remote-controlled opener, but the garage door spring had been disengaged.  After Olaes manually opened the garage door, she noticed items missing from the garage.  She also found numerous items were missing from the house, including computer equipment from the kitchen, stereo equipment from the living room, and two flat screen televisions from the upstairs bedrooms.  Additional missing items included a laptop computer, sewing machine, stereo speaker system, credit cards, and about $800 in cash.

Olaes called 911 and waited outside for officers to arrive.  While Olaes waited, contractor Jose Cruz arrived (after Bair notified him of the burglary).  Cruz stayed with Olaes for about two hours, attempting to assist her.

Police officers responded to the burglary call later that evening.  When they surveyed the house, Olaes and the officers noticed the downstairs bathroom window screen had been removed and the window was now fully open.  They saw a muddy handprint at the top of the bathroom wall adjacent to the wall with the bathroom window.  One officer also saw a print on the bathroom windowsill.

The day before, Bair had used the bathroom and did not notice any smudges or marks on the windowsill or the wall.  Olaes likewise had not seen the handprints earlier

3

in the day when she was cleaning the bathroom. A police officer collected print cards for the prints on the bathroom wall and windowsill.

Bair and Olaes also noticed a white plastic hard hat outside the home beneath the downstairs bathroom window near where the removed screen had been placed. The hat had not been there earlier in the day. Neither Bair nor Olaes recognized the hard hat, and it did not belong to contractor Cruz. The officers collected prints from the hard hat.

Olaes and Bair also noticed the big screen television in the family room had been disturbed, as if someone had unsuccessfully attempted to remove it from the wall. The police officers saw three or four fingerprints on this television that were "[v]ery apparent." The officers collected these prints.

Surveillance video camera footage showed a white pickup truck with an extended cab driving towards and then entering Olaes's driveway at about the time the burglary would have occurred. Police officers were unable to identify the license plate or trace the vehicle to the owner or driver. Although Cruz used a white truck for his work, his truck was different from the vehicle in the video.

The collected prints found at the scene included: (1) two sets of prints from the downstairs bathroom: the visible print on the windowsill and a muddy handprint on the adjacent bathroom wall; (2) fingerprints from the wall-mounted, big-screen family room television; and (3) three prints from the white hard hat found outside the bathroom window. Fingerprint examiner Marykay Hunt analyzed these prints and testified that certain of the prints matched Trujillo's fingerprints.

4

Regarding the prints from the downstairs bathroom, Hunt opined that the print lifted from the bathroom windowsill matched Trujillo's palm print. However, her analysis was inconclusive regarding the muddy handprint on the bathroom wall.

Regarding the fingerprints from the downstairs big screen television, Hunt determined one fingerprint matched Trujillo's right thumb and one fingerprint matched Trujillo's left thumb. Hunt also identified fingerprints matching Bair and Cruz from the same television set. The evidence showed Trujillo had assisted Cruz in installing this television set several weeks before the burglary, but after this installation the television had been wiped clean. Bair testified there were no visible fingerprints on the television the day before the burglary.

Regarding the plastic hard hat, Hunt concluded the fingerprint found on the back side of the hat matched Trujillo's left ring finger and the fingerprint on the hat's underbill side matched Trujillo's left thumb.

About three or four days before the burglary (after Trujillo had stopped working), Cruz (and Cruz's daughter and her boyfriend) repainted the downstairs bathroom. They first taped the windows, and then put a fresh coat of paint on all walls. Trujillo did not work in the downstairs bathroom while he was on the job, but he may have used the toilet while working there.

The fingerprint examiner testified that print evidence is "very fragile" and can be easily wiped away and will often "dissipate very quickly," particularly in a warm environment. The examiner said fingerprints would definitely be removed if the surface was painted or taped over.

5

Ten days after the burglary, a man attempted to use one of Bair's missing credit cards at a retail store. Surveillance video showed three males at the checkout register making a purchase with the card. Although the investigating officer initially believed one of the males was Trujillo, he later learned that Trujillo was in custody at the time of the attempted purchase. Police officers did not determine the identity of these men.

Trujillo was arrested about one month after the crime. At the time of his arrest, Trujillo did not have any of the stolen items with him. The prosecution presented evidence that burglars frequently sell or pawn property immediately after taking the property to avoid being caught with the stolen property.

The value of the items stolen from the Bair/Olaes home totaled approximately $6,600.

## DISCUSSION

Trujillo challenges the sufficiency of the evidence to support that he was the person who committed the crime. He argues that he was improperly linked to the crime solely by his fingerprints.

### I. *Applicable Legal Principles*

Under California law, fingerprints are strong evidence of identity and are " ' "ordinarily sufficient alone to identify the defendant." ' " (*People v. Andrews* (1989) 49 Cal.3d 200, 211, italics omitted; *People v. Johnson* (1988) 47 Cal.3d 576, 601; *People v. Tuggle* (2012) 203 Cal.App.4th 1071, 1076; *People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1588.) Evidence showing the defendant had prior access to the object or surface where the prints were found raises a factual issue whether the fingerprints were placed at

6

the time of the crime. (*People v. Tuggle, supra*, 203 Cal.App.4th at pp. 1076-1077; see *People v. Figueroa, supra*, 2 Cal.App.4th at p. 1588.) "The jury is entitled to draw its own inferences as to how the defendant's prints came to be on the [object] and when . . . and to weigh the evidence and opinion of the fingerprint experts." (*People v. Gardner* (1969) 71 Ca1.2d 843, 849; accord, *People v. Bean* (1988) 46 Cal.3d 919, 932-933.)

In reviewing a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) It is the jury's exclusive province to determine credibility and to resolve evidentiary conflicts and inconsistencies, and we presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*Ibid*.; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*Nelson*, at p. 210; see *People v. Bean, supra*, 46 Cal.3d at pp. 932-933.)

## II. *Analysis*

The evidence established that after having worked in the home for several weeks, Trujillo was familiar with the entrances and exits of the home and was aware Bair had expensive electronic items in his home. Trujillo stopped working for the contractor before the job was finished. The bathroom was then fully painted, and the windows were taped during the painting. The bathroom was cleaned, and the television was wiped

7

clean. Shortly after the burglary, police officers found three sets of prints that were later determined to match Trujillo's fingerprints and/or handprint: (1) the print found on the downstairs bathroom windowsill; (2) two fingerprints found on the big-screen mounted television in the living room that had been disturbed in the burglary; and (3) two fingerprints on the hard hat found outside the downstairs bathroom window.

At trial, the primary issue for the jury's consideration was whether the prosecution proved beyond a reasonable doubt that these prints were placed at the time of the burglary or whether there was a different explanation (i.e., Trujillo previously touched these surfaces/objects when he was working in the house). After considering the evidence, the jury found the prosecution met its burden. Viewing the record as a whole, we are satisfied there is substantial evidence to support this finding. The evidence was sufficient for the jury to find the identified prints reflected contact at the time of the burglary and that any of Trujillo's previously-placed fingerprints would have dissipated or been wiped off by cleaning, paint, or tape.

It was undisputed at trial that the burglar entered the house through the bathroom window. Trujillo's print was found on the bathroom windowsill. Although the evidence showed that Trujillo may have used the bathroom when he was working on the job, the evidence showed that *after* he stopped working on this job, the bathroom had been completely painted and the window area had been covered with tape. Additionally, on the morning before the burglary, Olaes had thoroughly cleaned the bathroom and did not notice the visible print marks on the windowsill or the adjacent wall. Further, the

location of the window—very high and close to the ceiling—made it unlikely that a person using the facilities would have had an occasion to touch the windowsill.

Additionally, Trujillo's fingerprints were on the hard hat found immediately below the bathroom window where the burglar entered. The evidence showed this hat had not been in or near the home before the burglary and it did not belong to Cruz or any of his other workers.

The evidence also showed that the night before the burglary, there were no visible fingerprints on the big screen television, and the next day, there were "very apparent" fingerprints, two of which matched Trujillo's fingerprints. The evidence showed that the burglar attempted to remove this television from the house, but was unable to do so.

Further, the burglary was committed in June when it was quite warm in the house. The prosecution presented evidence showing a fingerprint would more quickly dissipate in warm weather.

Putting together the fingerprint evidence with the fact that Trujillo was familiar with the home and knew of the existence of easily removable electronic equipment, the jury had sufficient evidence to conclude that Trujillo was the person who committed this burglary.

In challenging the sufficiency of the evidence, Trujillo relies on various facts that support his defense. For example, he emphasizes there was no evidence he owned the truck seen on the video surveillance camera or that he was in possession of money or the stolen items when he was arrested. However, the jury, as the finder of fact, could reasonably find the lack of additional evidence did not negate the strength of the

9

fingerprint evidence. Additionally, Trujillo's discussion of the house key is unavailing. The evidence showed that at the time of the burglary, Cruz had possession of the key, and this key was not in the place previously accessible to the workers. Similarly, the fact that neither Olaes nor Bair "closely examined" the bathroom before the burglary does not mean the jury was precluded from finding the visible smudges did not exist before the burglary. This is particularly true with respect to Olaes, who said that she spent about 25 minutes cleaning the bathroom that morning.

Trujillo relies on several decisions in which fingerprint evidence was found insufficient to support the conviction. (See, e.g., *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353 (*Mikes*); *Birt v. Superior Court* (1973) 34 Cal.App.3d 934 (*Birt*); *People v. Flores* (1943) 58 Cal.App.2d 764 (*Flores*); *People v. Redmond* (1969) 71 Ca1.2d 745 (*Redmond*).) Those cases are factually distinguishable.

In *Mikes*, 947 F.2d 353, the only evidence against the defendant was his fingerprints found on a moveable object (a turnstyle post used as the murder weapon) found at the scene. (*Id.* at pp. 355-356.) The court held this evidence was insufficient to support the murder conviction because the prosecution did not present any facts showing the defendant did not have prior access to the object, particularly because the object had previously been in a public area. (*Id.* at pp. 356-361.) This case is different because the prosecution acknowledged Trujillo had prior access to the home when he worked there,

but presented specific evidence showing that any fingerprints placed during that time would have been removed or dissipated before the burglary.[1]

In *Birt, supra*, 34 Cal.App.3d 934, there were no fingerprints found at the burglarized home or on any objects taken from the home. But the defendant was charged with burglary based on the defendant's fingerprint on a cigarette lighter found in a rental van containing the victim's stolen property. (*Id.* at pp. 937-938.) Finding this fingerprint insufficient to hold the defendant to answer for the burglary charge, the court stated: "At most, the presence of petitioner's fingerprint on the lighter found on the front seat showed that, at some unknown time and place, she had been inside the van; but there was no direct or circumstantial evidence to indicate when and where that had been. Only by guesswork, speculation, or conjecture can it be inferred that petitioner was inside the van, or in the area, at the time of the . . . burglary." (*Id.* at p. 938.) This case is different because the fingerprints were found in the burglarized home, and not merely in a vehicle used to transport the stolen goods.

In *Flores, supra*, 58 Cal.App.2d 764, evidence of a fingerprint on a rear view mirror established only that the defendant had been in a stolen car, not that he was involved in stealing the car. (*Id.* at pp. 766-768.) Under these circumstances, the court found there was insufficient evidence to sustain a grand theft conviction. (*Id.* at pp. 768-770.) This case is different because the item stolen in *Flores* was personal property (a

---

[1]    Additionally, California courts have questioned whether *Mikes* is binding authority to the extent it differs from the California Supreme Court's application of substantial evidence review pertaining to fingerprint evidence. (See *People v. Tuggle, supra*, 203 Cal.App.4th at p. 1076; *People v. Figueroa, supra*, 2 Cal.App.4th at pp. 1587-1588.)

11

vehicle) that could be transferred among parties; whereas the fingerprints here were found in the burglarized home.

In *Redmond, supra*, 71 Cal.2d 745, the defendant's fingerprint was found near a bedroom window, but the evidence showed the defendant (a television salesperson) had been in the house the day before the burglary and the defendant had discussed the television with the homeowners in their bedroom near the window. (*Id.* at p. 752.) On this record (and evidence showing the witnesses could not identify the defendant), the court reversed the burglary conviction, emphasizing defendant's presence in the bedroom the previous day. (*Id.* at pp. 756-757.) This case is different because here there was affirmative evidence presented showing the area where the print was found was wiped, cleaned, painted, or taped. Additionally, the hat with Trujillo's fingerprints was found directly beneath the burglary-access window.

Substantial evidence supported the jury verdict.

DISPOSITION

Judgment affirmed.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.

12