Filed 4/30/21  P. v. Salinas CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH SALINAS,<br><br>    Defendant and Appellant. | B300988<br><br>(Los Angeles County<br>Super. Ct. No. NA105346-02) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed in part and remanded with directions.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Joseph Salinas was convicted of the first degree murder of Juan Zamora (Pen. Code,[1] § 187) and possession of a firearm by a felon (§ 29800, subd. (a)(1)), with numerous enhancement allegations found true.  On appeal, Salinas contends:  (1) there was insufficient evidence to support the conviction; (2) he was denied due process by the trial court's erroneous exclusion of evidence; (3) he was denied due process when the court instructed the jury with CALCRIM No. 315; (4) cumulative error requires reversal; and (5) the sentence enhancements under section 667.5, subdivision (b) and section 667, subdivision (a) must be stricken.  We affirm the conviction, conclude the challenged enhancements must be stricken, and remand for resentencing.

**FACTUAL AND PROCEDURAL BACKGROUND**

Zamora was shot to death outside his home on Wilmington Boulevard at approximately 8:30 p.m. on April 23, 2016.  Salinas and his girlfriend Yvette Vasquez, both members of a rival gang, were charged with first degree murder and possession of a firearm by a felon  The information alleged Salinas used a firearm in the commission of the murder within the meaning of section 12022.53, subdivisions (b), (c), and (d), and that he committed the murder for the benefit of, at the direction of, or in association with a criminal street gang so as to require he serve a minimum of 15 years in prison before becoming eligible for parole (§ 186.22, subd. (b)(5)).  In conjunction with the possession of a firearm by a felon charge, it was also alleged Salinas committed this offense for the benefit of, at the direction of, or in association with a criminal street gang.  Salinas was alleged to have served

---

[1] All undesignated statutory references are to the Penal Code.

2

three prior prison terms for purposes of section 667.5, subdivision (b) enhancements, and to have one prior strike offense within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)–(d)).

The central issue at trial was identity. A witness who had been sitting in her car in the alley behind Zamora's home described seeing a car similar to that known to be under Vasquez's control pull into the alley around 8:30 p.m. A person exited the passenger side of the car and walked through a gate toward Zamora's home. The female driver stayed for a little while, then backed the car out of the alley. Footage from surveillance cameras in the alley was consistent with the witness's account.

At about 8:30 p.m., 12-year-old Dennis G. was sitting on a wall dividing apartment complexes near Zamora's home when he saw a man wearing a black hoodie and dark clothing walk away from the alley and toward Wilmington Boulevard. Dennis G. watched the man for approximately 10 seconds as he passed  The lighting was dim and the man's hood was pulled up, but Dennis G. could see the top of the man's head and the right side of his face. The man was bald and had a mole beneath his right eye. His hands were in his pocket.[2] The man turned north on Wilmington Boulevard, toward Zamora's home. Seconds later, Dennis G. heard gunshots. He later selected Salinas's photo from a photographic lineup, writing on the lineup document, "I don't know for sure, but it looks like Number 2."

---

[2]     At trial, Dennis G. testified he did not see the man holding anything and he had never said the man was holding something. The court took judicial notice of Dennis G.'s preliminary hearing testimony that the man was holding something.

Zamora's sister, who lived with Zamora, was standing in the front yard at the time of the shooting. She saw a Hispanic man wearing a gray hoodie and jeans approach Zamora, ask where he was from, and shoot him repeatedly. She could not see the man's face because his hood was pulled up. She believed he was Hispanic because of the sound of his voice; he also sounded young. The man was about the same height as Zamora, five feet nine inches tall, although she had initially estimated the shooter's height as approximately five feet two inches tall. The shooter turned and ran north on Wilmington, the opposite direction from which he had approached; and he turned in the area of the next street, G Street. Zamora's sister immediately called 911; the call was made at 8:30 p.m.

A nearby resident heard the gunshots and then saw a person running northward on Wilmington, away from the location of the shooting. Another neighbor saw a running man wearing a dark hoodie and dark pants, and he also found a mobile phone in pieces on the sidewalk. Analysis of the damaged phone revealed multiple passwords and an account corresponding to Salinas's name, gang, and moniker.

Surveillance video of the area showed a man running at full speed around the corner from Wilmington Boulevard to G Street just after the shooting.

Vasquez and Salinas were arrested. After her arrest, Vasquez spoke with a police officer who was pretending to be an inmate. Vasquez admitted, "I was driving. That was me." "I was there that day," but she said the passengers in her car were her children and nephew. When the undercover officer asked Vasquez if they had done a "jale," meaning committing criminal acts for a gang, Vasquez responded "187," a reference to the

4

section of the Penal Code defining murder. In a recorded police interview, Vasquez did not deny driving the car, but she maintained Salinas had not been with her. She claimed to have been dropping off her nephew and that the person seen exiting the car was her daughter moving from the back seat to the front seat. The surveillance footage showed no one in the alley who exited and then reentered the car.

A February 2016 booking document indicated Salinas was five feet eight inches tall and weighed 190 pounds, with black hair. A booking document from November 2016 listed his height as five feet seven inches and his weight as 180 pounds. Based on a photograph, a police officer estimated Salinas's height as between five feet eight inches and five feet nine inches tall. Salinas's hairstyle and weight changed over time. Salinas had the name of his gang and other references to the gang tattooed on his body. In a surreptitiously recorded conversation after his arrest he identified himself with a moniker found on his phone.

The jury convicted Salinas of first degree murder and possession of a firearm by a felon, and it found all the enhancement allegations true.[3] Salinas admitted one prior strike offense and three prior prison terms. The trial court declined to strike Salinas's prior strike and sentenced Salinas to a base term of 25 years to life in prison for the murder, doubled pursuant to the Three Strikes law, and added a term of 25 years to life for the personal discharge of a firearm causing death (§ 12022.53, subd. (d)). The court imposed two 1-year sentence enhancements

---

[3] Vasquez was also convicted of first degree murder and being a felon in possession of a firearm. We affirmed the judgment in part in an unpublished opinion. (*People v. Vasquez* (Aug. 26, 2020, B298378).)

pursuant to section 667.5, subdivision (b).  Although the information did not contain an allegation under section 667, subdivision (a), it appears the court and parties were unaware of that fact at sentencing; the prosecutor requested, and the court imposed, an additional five-year prison term under that statute.

The court imposed an upper term sentence of three years for the firearm possession conviction and doubled it pursuant to the Three Strikes law.  It selected the upper term of three years for the gang enhancement and designated the 9-year sentence on this count to run consecutively to the murder sentence.  Salinas's aggregate sentence was 91 years to life in state prison.  Salinas appeals.

## DISCUSSION

### I.      Sufficiency of the Evidence

Salinas argues there was insufficient evidence to support the conviction, specifically with respect to the element of identity.  " ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]  We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]  In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Rangel* (2016) 62 Cal.4th 1192, 1212-1213.)

The evidence was sufficient to support the conviction. Dennis G. identified Salinas from a photographic lineup as the man he saw walking toward Zamora's home moments before the shooting. The testimony of a single witness is sufficient to prove a fact (Evid. Code, § 411), and, unless the testimony is physically impossible or inherently improbable, to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) There is no indication the testimony was inherently improbable or physically impossible. While Dennis G. was not completely certain of the identification, the jury was entitled to credit it; and this evidence, particularly when supplemented by the presence of Salinas's dropped mobile phone near the scene and the evidence that Vasquez drove the car that dropped him off, was sufficient to permit a reasonable jury to conclude Salinas was the shooter beyond a reasonable doubt.

Salinas, however, argues Dennis G.'s identification was unreliable. He points out that it was nighttime and the lighting was poor; Dennis G. only saw the shooter for about 10 seconds; Dennis G. did not see the man's full face; Dennis G. vacillated as to whether the mark on the man's face was a mole or tattoo; Dennis G. did not provide a full description of the shooter; and the identification was not unequivocal. Salinas's claims all go to the weight of Dennis G.'s identification and were for the jury to consider. " 'The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, the uncertainty of recollection, and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance.' "

7

(*People v. Mohamed* (2011) 201 Cal.App.4th 515, 522.)  We neither reweigh the evidence nor reevaluate the credibility of witnesses.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).)  If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  (*Ibid.*)

Salinas also argues Dennis G.'s identification was unreliable because he was impermissibly coached by detectives. " 'A due process violation occurs only if the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." ' [Citation.]  'In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification.' " (*People v. Sanchez* (2019) 7 Cal.5th 14, 35.)

The interview in which Dennis G. made the identification was recorded, and it was not so impermissibly suggestive as to give rise to a likelihood of irreparable misidentification.  There was no indication of coaching.  Dennis G. was told he did not have to select a photo, and when he hesitated over the array, the detective said, "Okay.  It seemed like you were kind of looking at

8

one, no?" Dennis G. said number two, a photograph of Salinas, looked similar to the person he had seen, but he was not sure because the man he had seen was bald and had a mole. The detective encouraged Dennis G. to focus on the eyes and face itself rather than easily changed features such as hair or moustache as he examined the photographs. The detective asked which person looked like the man he'd seen; Dennis G. responded, "Number two." The detective said, "[K]ind of looks like him but not—not 100% sure." Dennis G. agreed, and volunteered that the man he saw was a little taller. At that point, the officer instructed Dennis G. to write on the photographic lineup "[w]hatever you think in your words. I just want—I want it to be from—from your words, like from your heart, like how you feel about the pictures we showed you." Dennis G. wrote, "I don't know for sure, but it looks like Number 2." The detective thanked Dennis G., and the interview concluded. The record reveals no indications of coaching or other impermissibly suggestive behavior.

Salinas also attacks the other evidence in the case and points out discrepancies in the testimony, but again, we do not reweigh the evidence on appeal. (*Lindberg, supra,* 45 Cal.4th at p. 27.) He argues the presence of his mobile phone is insufficient proof of identification, relying on case law about the limitations of fingerprint evidence on portable items (*People v. Jenkins* (1979) 91 Cal.App.3d 579; *People v. Flores* (1943) 58 Cal.App.2d 764; *Birt v. Superior Court* (1973) 34 Cal.App.3d 934; and *People v. Robinson* (1964) 61 Cal.2d 373), but here there was evidence of identity beyond Salinas's phone: Vasquez dropped him off in the alley and he was identified by an eyewitness as the man walking toward Zamora's home just moments before the murder.

9

The evidence was sufficient to permit a reasonable jury to convict Salinas beyond a reasonable doubt. "A jury's finding will not be reversed unless it is clearly shown that under no hypothesis is there sufficient evidence to support it. [Citation.] As long as substantial evidence supports the jury's finding, the possibility that the jury could reasonably have reached a different conclusion does not justify reversal." (*People v. Mendez* (2011) 188 Cal.App.4th 47, 59.)

## II.    Exclusion of Evidence

Salinas sought to present evidence from a prospective witness who had approached the police three to four hours after the shooting. Defense counsel described the information the witness had provided to the police. At an unspecified time that evening, the prospective witness was driving northbound on Wilmington Boulevard several blocks from the crime scene when she saw a red Ford vehicle. Approximately 20 to 25 minutes later, she returned to the area and went to a doughnut shop located four to five blocks away from the shooting site. There she saw a Hispanic man, approximately five feet, nine inches tall, wearing a gray hoodie, dark pants, and black gloves. The man seemed to be covering his face with his hoodie and was not making eye contact with anyone; he appeared anxious. Soon thereafter, a 1990 unknown make or model four-door red vehicle, the same one she had seen before, pulled into the doughnut shop in the drive-through, facing the wrong way. The man quickly got into the front passenger seat and exchanged words with the driver. The prospective witness could see three Hispanic men in the vehicle, and she believed they lived in the same general area and were members of the same gang as Salinas. The vehicle then sped away from the doughnut shop in an unknown direction. As

10

the vehicle left, a Hispanic man approached the doughnut shop and began telling passers-by that the man who had entered the vehicle had just shot someone down the street.

The trial court excluded the evidence, explaining there must be direct or circumstantial evidence linking a third party to a crime, and what defense counsel had described was "a very nice citizen who I think is reading far too much into what she saw, and . . . there is just no evidence, even—certainly not direct or— it's very nebulous, on a circumstantial level." Salinas argues this was error and it denied him due process.

"[T]hird party culpability evidence may be admitted if it is relevant and its probative value is not substantially outweighed by the risk of undue delay, prejudice, or confusion, or otherwise made inadmissible by the rules of evidence. [Citations.] 'To be admissible, the third-party evidence need not show "substantial proof of a probability" that the third person committed the act; it need only be capable of raising a reasonable doubt of defendant's guilt. At the same time, we do not require that any evidence, however remote, must be admitted to show a third party's possible culpability.' [Citation.] For example, 'evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt. . . . ' [Citation.] Moreover, admissible evidence of this nature points to the culpability of a *specific* third party, not the possibility that some unidentified third party could have committed the crime. [Citations.] For the evidence to be relevant and admissible, 'there must be *direct or circumstantial evidence linking the third person to the actual perpetration of the crime.*' [Citation.] As with all evidentiary rulings, the exclusion of third

11

party evidence is reviewed for abuse of discretion." (*People v. Turner* (2020) 10 Cal.5th 786, 816–817.)

There was no abuse of discretion or constitutional violation here. The prospective witness saw a red vehicle at an unspecified time in the same general area as the shooting, later watched an unidentified man enter the vehicle, and speculated she might have seen the shooter on the basis of a rumor from another unidentified man that the first man had been involved in a shooting nearby. This did not constitute direct or circumstantial evidence linking a third party to the murder of Zamora, and the evidence was properly excluded.

## III.  CALCRIM No. 315

Salinas argues the trial court erred when it instructed the jury with CALCRIM No. 315 as to how to evaluate eyewitness identifications, because the instruction mistakenly permits the jury to consider an eyewitness's level of certainty in his or her identification. The California Supreme Court has held a jury may consider an eyewitness's certainty in evaluating his or her testimony. (*People v. Sánchez* (2016) 63 Cal.4th 411, 462 (*Sánchez*)); it is currently considering whether the certainty factor as articulated in CALCRIM No. 315 remains valid or is a violation of a defendant's due process rights. (*People v. Lemcke*, review granted Oct. 10, 2018, S250108.) Unless and until the Supreme Court overrules its prior precedent, the trial court was bound by it—and so are we. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction"].) We therefore reject Salinas's argument.

12

Even if the instruction were erroneous, however, there could be no possible prejudice to Salinas. The only eyewitness who identified Salinas, Dennis G., was not certain in his identification. For the jury to consider Dennis G.'s lack of certainty in evaluating his identification could only have benefitted Salinas. (See *Sánchez, supra*, 63 Cal.4th at p. 462 [telling the jury to consider the certainty factor "could only benefit defendant when it came to the uncertain identifications"].) Any error was harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## IV.    Cumulative Error

We reject Salinas's contention that the cumulative effect of the claimed errors identified in his appeal deprived him of due process of law and a fair trial. Because we have found none of Salinas's claimed errors to constitute individual errors, they cannot as a group constitute cumulative error. (*People v. Richardson* (2008) 43 Cal.4th 959, 1036.)

## V.    Recidivist Sentence Enhancements

At sentencing, the court imposed a five-year sentence enhancement under section 667, subdivision (a), and two 1-year prior sentence enhancements pursuant to section 667.5, subdivision (b). These enhancements must be stricken and the matter remanded for resentencing.

### A.    Section 667, Subdivision (a) Enhancement

In the information Salinas was alleged to have served three separate prior prison terms pursuant to section 667.5, subdivision (b), and the conviction that gave rise to one of those

13

prison terms was alleged to constitute a strike within the meaning of the Three Strikes law. The information did not contain any allegation, either in so many words or by citing a relevant statute, of a prior serious felony conviction enhancement under section 667, subdivision (a) or its associated five-year term. Nor was this enhancement mentioned or alluded to when Salinas admitted his prior strike and his three prior prison terms.

Because a section 667, subdivision (a) enhancement was not pleaded, proven, or admitted, the trial court could not impose it at sentencing.[4] (*People v. Nguyen* (2017) 18 Cal.App.5th 260, 266–267; § 1170.1, subd. (e) ["[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact"]; *Mancebo*, *supra*, 27 Cal.4th at p. 747 ["in addition to the statutory requirements that enhancement provisions be pleaded and proven, a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes"].) That the information alleged Salinas had previously committed a serious felony within the allegations that he was subject to the Three

_____

[4] We reject the People's contention Salinas forfeited this claim because he failed to object contemporaneously to what they describe as the trial court's exercise of its sentencing discretion. This was not an exercise of sentencing discretion; the court could not legally impose this enhancement. As such, the sentence was unauthorized and not subject to waiver or forfeiture. (*People v. Mancebo* (2002) 27 Cal.4th 735, 749, fn. 7 (*Mancebo*); see also *People v. Anderson* (2020) 9 Cal.5th 946, 961 [pleading failures related to sentence enhancements constitute "the type of error we should address even though [the defendant] did not bring it to the trial court's attention"].)

Strikes law and section 667.5, subdivision (b) was insufficient to place Salinas on notice that he was facing a five-year sentence enhancement under section 667, subdivision (a). "Charging language which expressly states that a fact is alleged to invoke one particular statute does not adequately inform the accused that the People will use it to invoke a different statute." (*People v. Nguyen*, at p. 267.) "[W]hen, as here, the People allege a prior serious felony conviction, and when they cite the [T]hree [S]trikes law but do *not* cite the prior serious felony conviction statute, we can only conclude that they have made 'a discretionary charging decision.' " (*Ibid*.) The five-year enhancement must be stricken.

    B.    Section 667.5, Subdivision (b) Enhancements

Although the section 667.5, subdivision (b) enhancements were properly imposed at the time Salinas was sentenced, the Legislature subsequently passed Senate Bill No. 136 (Stats. 2019, ch. 590, § 1) (Senate Bill 136) amending section 667.5, subdivision (b) to eliminate the prior prison term enhancement except in cases involving sexually violent offenses. Salinas's prior convictions were not for sexually violent offenses. Accordingly, under section 667.5, subdivision (b), as amended, Salinas would no longer qualify for the imposition of one-year sentence enhancements for his prior prison terms.

Senate Bill 136 became effective as of January 1, 2020. (Cal. Const., art. IV, § 8, subd. (c)(2).) Section 667.5, subdivision (b), as amended, applies retroactively to Salinas, because his conviction is not yet final and the amended statute leads to a reduced sentence. (See *People v. Brown* (2012) 54 Cal.4th 314, 323–324; *In re Estrada* (1965) 63 Cal.2d 740, 748 [for a non-final conviction, "where the amendatory statute mitigates punishment and there is no saving clause, the rule is

15

that the amendment will operate retroactively so that the lighter punishment is imposed"].)  Accordingly, as Salinas argues and the People agree, the section 667.5, subdivision (b) enhancements must be stricken.

C.      Resentencing

We remand for resentencing so the trial court may reconsider the entire sentencing scheme when it strikes the one-year prior prison term enhancements and the five-year prior serious felony conviction enhancement.  (See *People v. Hill* (1986) 185 Cal.App.3d 831, 834 [on remand for resentencing a trial court is "[n]ot limited to merely striking illegal portions" of a sentence but "may reconsider all sentencing choices," "because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components"].)

### DISPOSITION

The conviction is affirmed.  The matter is remanded to the trial court with directions to strike the section 667, subdivision (a) and section 667.5, subdivision (b) enhancements and to resentence Salinas.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        STRATTON, J.

We concur:


BIGELOW, P. J.                    WILEY, J.


16