Filed 6/17/25  P. v. Felix CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ALEJANDRO FELIX,<br><br>    Defendant and Appellant. | D084175<br><br><br><br>(Super. Ct. No. SCE411897) |

APPEAL from a judgment of the Superior Court of San Diego County, Selena D. Epley, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.


David Alejandro Felix appeals the judgment sentencing him to prison after a jury found him guilty of unlawful taking or driving of a vehicle, grand

theft of two firearms that were inside the vehicle, and other crimes. He complains of instructional error and insufficiency of the evidence with respect to the grand theft convictions. We affirm.

I.

BACKGROUND

A. *Facts*

Officer Jason Sargent was off duty when he drove his assigned police truck to a convenience store one night. The truck contained a lockbox in which two firearms were stored. After completing his purchase, Sargent got back into the truck and began to drive away. He heard a bang on the passenger side of the truck and stopped. Felix opened the passenger door, entered the truck, and told Sargent he was not safe and needed to drive. Sargent drew his firearm and ordered Felix to get out of the truck. After Felix complied, Sargent exited the truck, ordered Felix to get on the ground, and tried to get his phone out to call 911. As Sargent went around the back of the truck, Felix went around the front, got into the driver's seat, and began to drive off. Sargent caught up to the truck and tried to stop it, but Felix accelerated and drove off. Sargent did not give Felix permission to drive the truck and reported the incident to the sheriff's department.

About three hours later, a customer waiting in the drive-through lane at a fast food restaurant spotted Sargent's truck in the parking lot. The red and blue lights atop the truck were flashing, all the doors were open, but nobody was inside or near the truck. The customer saw Felix approach the truck and reach inside, and noticed Felix had what appeared to be a handgun tucked into his waistband. The customer reported the incident to law enforcement.

2

A deputy sheriff quickly arrived at the restaurant in a patrol vehicle. Felix drove Sargent's truck onto the freeway, and the deputy followed with his lights and siren activated. Felix then led the deputy and other law enforcement officers on a chase for about 25 miles at speeds between 90 and 120 miles per hour. At one point, Felix crossed the freeway median and drove southbound in the northbound lanes, forcing motorists to take evasive action to avoid collision. The vehicle chase ended when Felix exited the freeway and crashed Sargent's truck into a fire hydrant.

Felix got out of the truck and ran across a parking lot. When two sheriff's deputies arrived at the scene, one drew his firearm, pointed it at Felix, and ordered him to get on the ground. Felix did not comply and charged towards the deputies. One of the deputies fired his taser at Felix, and he fell to the ground. Felix kicked at other law enforcement officers who had arrived at the scene as they put handcuffs on him.

Sargent later inspected his truck and took an inventory of its items. The two firearms were still in the lockbox, and it did not appear anybody had opened the box. At least two of the tires were "popped," but nothing was missing from the truck.

B. *Criminal Proceeding*

The People charged Felix as follows:

- Counts 1 & 2: grand theft of a firearm (Pen. Code, § 487, subd. (d)(2)).
- Count 3: unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a)).
- Count 4: receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)).
- Count 5: reckless driving while evading a peace officer (Veh. Code, § 2800.2, subd. (a)).

3

- Count 6: driving in the direction opposite to that in which traffic lawfully moves while evading a peace officer (*id.*, § 2800.4).

- Count 7: resisting an executive officer (Pen. Code, § 69, subd. (a)).

The People alleged Felix had a prior conviction that constituted a serious felony for purposes of a five-year enhancement (*id.*, § 667, subd. (a)(1)) and a strike for purposes of the "Three Strikes" law (*id.*, §§ 667, subds. (b)–(i), 1170.12). They alleged several aggravating circumstances for sentencing purposes. (Cal Rules of Court, rule 4.421(a)(9), (b)(2), (3), (5).)

Felix pled not guilty and denied all allegations. The case proceeded to a jury trial. The People presented testimony and other evidence to establish the facts summarized in part I.A., *ante*.

After the close of evidence, the trial court discussed jury instructions with counsel. To avoid any juror confusion about whether Felix had to know there were firearms inside Sargent's truck to be guilty of grand theft of a firearm, the court proposed modifying the pattern instruction on that crime (CALCRIM No. 1800) to tell the jury that if the People proved Felix intended to take Sargent's truck, they did not also have to prove he intended to take its contents. Felix's counsel objected to any modification, but stated, "If the court's gonna give something, then this language appears fair."

The trial court instructed the jury on grand theft of a firearm by modifying CALCRIM No. 1800 to include the italicized sentence below:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant took possession of a firearm owned by someone else;

"2. The defendant took a firearm without the owner's or owner's agent's consent;

4

"3. When the defendant took the firearm he intended to deprive the owner of it permanently or to remove it from the owner's or owner's agent's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property;

"AND

"4. The defendant moved the firearm, even a small distance, and kept it for any period of time, however brief.

"*If you find that the People have proven beyond a reasonable doubt that the defendant intended to take a vehicle, the People do not have to prove that the defendant had the specific intent to take the contents within that vehicle.*

"An *agent* is someone to whom the owner has given complete or partial authority and control over the owner's property." (Some italics added.)

The court used CALCRIM No. 1820 to instruct the jury on unlawful taking or driving of a vehicle. It told the jury the People had to prove Felix "drove someone else's vehicle without the owner's consent," and when he did so, "he intended to deprive the owner of possession or ownership of the vehicle for any period of time."

The court used CALCRIM No. 252 to instruct the jury that the crimes charged against Felix "require[d] proof of the union, or joint operation, of act and wrongful intent," and that "[t]he act and the specific intent and/or mental state required are explained in the instruction for that crime." As to grand theft of a firearm, the court told the jury "[t]he specific intent or mental state required . . . is to deprive the owner of it permanently or to remove it from the owner's or owner's agent's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property." As to unlawful taking or driving of a vehicle, the court told the jury "[t]he specific intent or mental state required . . . is the defendant

5

intended to deprive the owner of possession or ownership of the vehicle for any period of time."

The court instructed the jury to "[p]ay careful attention to all of these instructions and consider them together." (CALCRIM No. 200.)

The jury found Felix guilty on all counts. He waived his right to a trial on the prior conviction allegations and admitted them. Felix also waived his right to a trial on the alleged aggravating circumstances for sentencing purposes, and admitted he had served a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)). The court granted the People's motion to dismiss the other alleged aggravating circumstances.

At the sentencing hearing, the trial court denied Felix's motion to strike his prior strike conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. It dismissed the five-year enhancement for the prior serious felony conviction. The court sentenced Felix to prison for an aggregate term of eight years, eight months.[1]

---

[1] The court selected count 5 (reckless driving while evading a peace officer) as the principal term and imposed the upper term of three years, which it doubled to six years based on the prior strike conviction. (Veh. Code, § 2800.2, subd. (a); Pen. Code, §§ 18, subd. (a), 667, subd. (e)(1), 1170.12, subd, (c)(1).) The court imposed two consecutive terms of 16 months each (one-third the middle term of two years, i.e., eight months, doubled based on the prior strike conviction) on the convictions on count 1 (grand theft of a firearm) and count 7 (resisting an executive officer). (Pen. Code, §§ 18, subd. (a), 69, subd. (a), 487, subd. (d)(2), 667, subd. (e)(1), 1170.1, subd. (a), 1170.12, subd. (c)(1).) On the other convictions, the court imposed upper terms and stayed their execution pursuant to Penal Code section 654.

## DISCUSSION

A.    *Instructional Error*

As his first claim of error, Felix complains the trial court's modification of the pattern instruction on grand theft of a firearm removed the specific intent requirement of that crime from the jury's consideration and thereby violated his due process right to have the jury determine every element of the crime beyond a reasonable doubt.  He contends:  "The court canceled the intent-to-steal requirement of [Penal Code] section 484 by telling the jury in the modification . . . that the prosecution was not required to prove that element if it found beyond a reasonable doubt that he intended to take the vehicle."  Felix points out the jury could find him guilty of unlawfully taking the vehicle if he intended to deprive the owner of possession or ownership *for any period of time*, not *permanently* as required for grand theft.  He further argues the trial court's instructional error was not harmless beyond a reasonable doubt, and asks us to reverse the two convictions of grand theft of a firearm.

We review Felix's claim of instructional error de novo.  (*People v. Lewis* (2023) 14 Cal.5th 876, 900.)  An instructional error that relieves the prosecution of its burden to prove an element of the charged crime beyond a reasonable doubt, by either misdescribing or omitting the element, violates the due process clause.  (U.S. Const., 14th Amend., § 1; *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277–278; *People v. Hendrix* (2022) 13 Cal.5th 933, 942.)  In deciding whether a due process violation occurred, we consider the challenged instruction in the context of all the instructions and the trial record, including the arguments of counsel, and determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible

manner.  (*Estelle v. McGuire* (1991) 502 U.S. 62, 72; *People v. Mataele* (2022) 13 Cal.5th 372, 419; *People v. Young* (2005) 34 Cal.4th 1149, 1202.)

The trial court's instructions did not misinform the jury on the mental state required for grand theft of a firearm.  In its instruction specific to that crime, the court told the jury the People had to prove that when Felix "took the firearm he intended to deprive the owner of it *permanently* or to remove it from the owner's or owner's agent's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property."  (CALCRIM No. 1800, italics added.)  The court described the mental state the same way in the general instruction on union of act and intent.  (CALCRIM No. 252.)  Those instructions correctly stated the law.  (Pen. Code, § 484, subd. (a); *People v. Avery* (2002) 27 Cal.4th 49, 55; *People v. Davis* (1998) 19 Cal.4th 301, 305 (*Davis*).)

The trial court did not eliminate or alter the mental state required for grand theft of a firearm by modifying CALCRIM No. 1800 to state:  "If you find that the People have proven beyond a reasonable doubt that the defendant intended to take a vehicle, the People do not have to prove that the defendant had the specific intent to take the contents within that vehicle."  That language neither incorporated nor referenced the different mental state required for unlawful taking or driving of a vehicle, i.e., "intent either to permanently *or temporarily* deprive the owner . . . of his or her title to or possession of the vehicle."  (Veh. Code, § 10851, subd. (a), italics added; see CALCRIM No. 1820.)  When read with the rest of CALCRIM No. 1800, the added language informed the jury that if the People proved Felix took Sargent's truck with the intent to deprive him of it permanently (the mental state spelled out in the instruction), the People did not also have to prove he specifically intended to take the firearms that were inside the truck.  That is

8

a correct statement of the law. "The required mental state is an intent to steal, not an intent to steal specific property." (*In re Jesus O.* (2007) 40 Cal.4th 859, 868.) "[T]hose who intend to steal are guilty of the theft of all property they actually take" (*ibid.*), including a firearm inside a container a defendant takes with intent to deprive the owner of it permanently (*People v. Campbell* (1976) 63 Cal.App.3d 599, 615 (*Campbell*)). The court told the jury to "[p]ay careful attention to all of these instructions and consider them together." (CALCRIM No. 200.) We assume the jurors did so and correctly concluded the mental state required for grand theft of a firearm was as stated in CALCRIM Nos. 252 and 1800. (*People v. Landry* (2016) 2 Cal.5th 52, 95; *People v. Ocegueda* (2023) 92 Cal.App.5th 548, 557.)

The evidence and arguments presented to the jury dispel any doubt about whether the jury correctly understood the modified instruction. The evidence showed Felix took Sargent's truck without his consent, kept it for about three hours, and fled from it when the tires blew out and he crashed into a fire hydrant after a 25-mile high-speed chase with law enforcement officers. No evidence suggested Felix intended to return the truck after " 'driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding).' " (*People v. Garza* (2005) 35 Cal.4th 866, 876.) The prosecutor never argued a temporary taking of the truck as a basis for finding Felix guilty of grand theft of the firearms inside the truck. He read the elements from CALCRIM No. 1800 and argued that when Felix took the firearm, "he clearly meant to take it forever." The prosecutor then read the modification of the instruction and told the jury that if Felix "intend[ed] to deprive the owner of the container, the vehicle in this case, then I don't have to separately prove to you that he also had the intent to steal the stuff inside the vehicle. . . . [A]s long as [he] stole the container, [he is] responsible for

9

everything inside of it." The prosecutor later argued as to count 4 (receiving a stolen vehicle) that Felix knew the truck was stolen because he "actually stole it." Felix's counsel argued Felix "wasn't trying to steal the car. He was trying to get away." She cited CALCRIM No. 252 and argued the jurors could not find Felix guilty of "stealing a vehicle . . . unless [they] f[ou]nd that at the exact moment he got in the car and took off, he was meaning to steal the car." The repeated references during closing arguments to stealing the vehicle were significant, because "steal" is commonly understood to mean "take or appropriate without right or leave and with intent to keep or make use of wrongfully <*stole* a car>." (Merriam-Webster's Collegiate Dict. (11th ed. 2005) p. 1220; see *Davis, supra*, 19 Cal.4th at p. 305 ["The intent to steal . . . is the intent, without a good faith claim of right, to permanently deprive the owner of possession"].) The arguments thus made clear the theory of guilt on the charges of grand theft of a firearm was that Felix intended to take and to keep the truck that contained the firearms, not that he intended to take the truck temporarily and to return it to Sargent.

In sum, based on the instructions as a whole and the trial record, we conclude there is no "reasonable likelihood that the trial court's [modification of CALCRIM No. 1800] caused the jury to misapply the law in violation of the Constitution." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) An "instruction[ ] should be interpreted . . . so as to support the judgment rather than defeat it if [it is] reasonably susceptible to such interpretation," as it is here. (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.) We therefore reject the claim of instructional error and need not, and do not, address Felix's related contention the error was not harmless beyond a reasonable doubt.

B. *Sufficiency of Evidence*

As his second claim of error, Felix complains his convictions of grand theft of a firearm violated his right to due process of law because the evidence was insufficient to establish beyond a reasonable doubt that he intended to steal the firearms. He contends that "where, as here, the defendant is charged with stealing specific items, it must be proven that he had the intent to steal those items." Felix argues there was no evidence he knew any firearms were in Sargent's truck, and he could not intend to steal something he did not know existed. He further argues the evidence showed he intended only a short-term deprivation of possession of the truck and had no interest in the contents of the lockbox inside the truck. He asks us to reverse the convictions and to bar a retrial on the charges.

On a due process challenge to the sufficiency of the evidence to support a conviction, the reviewing court does not " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.) We review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Hin* (2025) 17 Cal.5th 401, 455; *People v. Johnson* (1980) 26 Cal.3d 557, 562.)

Before reviewing the evidence on intent, we reject Felix's contention the People had to prove he intended to steal the firearms specifically. As we noted earlier, for grand theft "[t]he required mental state is an intent to steal,

11

not an intent to steal specific property." (*In re Jesus O., supra*, 40 Cal.4th at p. 868.)  And as we also noted earlier, one who takes a container (in this case, Sargent's truck) with the intent to steal it may be convicted of grand theft of what is inside the container (in this case, the firearms) based on a transfer of that intent.  (*Campbell, supra*, 63 Cal.App.3d at p. 615 & fn. 11.)  Hence, the question in this case is whether the evidence introduced at trial sufficed to allow a rational jury to find beyond a reasonable doubt that Felix intended to steal the truck containing the firearms.

Based on our review of the trial record, the answer to that question is *yes*.  Although the People introduced no direct evidence of Felix's intent to steal the truck, they could prove such intent based on inferences reasonably drawn from the facts established at trial.  (*People v. Banks* (2014) 59 Cal.4th 1113, 1156; *People v. DeLeon* (1982) 138 Cal.App.3d 602, 606; *People v. Walbeck* (1943) 59 Cal.App.2d 277, 281.)  Evidence presented at trial showed that Felix drove off in the truck, even though Sargent had not given him permission to do so and tried to stop him; continued driving the truck for approximately three hours; and led law enforcement officers on a high-speed chase for 25 miles, until the tires blew out and the truck crashed into a fire hydrant.  Felix had sufficient time and opportunity to return the truck to Sargent or to surrender it to law enforcement officers had he not intended to keep it, but he chose to drive the truck until it became disabled.  "It is persuasive of a criminal intent . . . that the [truck] was, when [re]covered, twenty five miles distant from [where it had been taken] and in the possession of the accused." (*People v. Bowman* (1953) 117 Cal.App.2d 78, 80.)  From these circumstances, the jury reasonably could infer that when Felix took the truck he had the "intent, without a good faith claim of right, to permanently deprive [Sargent] of possession." (*Davis, supra*, 19 Cal.4th at

p. 305.)  The evidence sufficiently established the intent to steal required for the convictions of grand theft of the firearms that were inside Sargent's truck.

## III.
## DISPOSITION

The judgment is affirmed.


IRION, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.